WILLIAM ZOLLIE JONES et al. v. ELIHU PARK, Appellant.

Division One, June 2, 1920.

1. **FOREIGN JUDGMENT: Constructive Notice: Binding Effect on Missouri Citizens: By What Law Construed.** Whether the proceedings of a Kentucky court construing the will of a resident testator of Kentucky, probated in that state, were sufficient to give constructive notice to non-appearing devisees resident in Missouri, is to be determined by the laws of Kentucky, and not by the laws of Missouri.

2. ———: **Power of Court: General Common Law Jurisdiction: Ancillary Matters.** A court of a foreign state, shown by its statute to possess general, legal and equitable jurisdiction and to have cognizance of all cases not exclusively delegated to some other tribunal, will be presumed to have had jurisdiction of the subject-matter of a suit brought by administrators of a will there probated, for the partition of the lands belonging to the estate, the

Jones v. Park.

appointment of trustees needed to carry out the direction of the will regarding the estates devised, the investment of the personality in land according to its directions, and for a construction of the will to make clear the duties of the administrators in carrying out the trusts it created.

3. ——: Jurisdiction of Subject-matter: Notice to Parties. Although all the personal and real property whose title would be affected by the judgment of the foreign court was before the court and within its territorial jurisdiction, notice, either actual or constructive, to the parties interested, was essential in order for the judgment to conclude them. But actual notice to non-resident parties is not required.

4. ——: Constructive Notice: Proof of Statutes and Decisions. To establish jurisdiction of the Kentucky court to adjudicate the rights of Missouri citizens under a Kentucky will, attempted to be brought in by notice by an order of publication, the steps prescribed must have been substantially followed in order to justify a ruling that the notice was effective; and the Kentucky statutes which prescribed the steps to be taken must be put in evidence, in the trial in the Missouri court of a suit brought to determine what title to Missouri land bought by the proceeds of the Kentucky estate was acquired by the Missouri legatees and their heirs.

5. ——: ——: Mailing Letter: Informing Non-resident of Nature of Action. Where the Kentucky statute required the warning attorney, appointed by the Kentucky court to represent certain nonresident defendants, to inform them of the nature of the action, a statement written and filed by him in which he states he had "written to said non-residents, duly informing them of the pendency of the suit," does not show substantial compliance with the statute or that he had made any effort to inform them of the nature of the suit. And where the Kentucky statute required the plaintiffs in a suit to state in an affidavit, necessary to be made in order to obtain a warning order to non-residents, the post office nearest their place of residence, a statement by the warning-order attorney that he had written them and received no reply, without any information as to what post office he had addressed the letter, is not a substantial compliance with the statute.

6. ——: ——: Court Decisions. Where the title to Missouri lands depends upon a Kentucky will and a judgment of a Kentucky court construing that will, decisions of the Kentucky court defining such words as "die without issue" and "die without leaving issue," used in the will and vital in the construction of the will here, should be put in evidence, since the testator's dispositions of his property were presumably made with the law of his domicile in mind, and his intentions should be ascertained in the light of that law.

7. ———: ———: *No Evidence of Statutes and Court Decisions: Re-
mand for New Trial.* Where a cause ought to be determined ac-
cording to the law of the foreign state, where the will out of
which the controversy arises was made and probated, and the
will was construed by a court of competent jurisdiction in that
state before the proceeds of the estate were invested in real es-
tate in this, in an attempted compliance with its decree, and
neither the statutes of said state prescribing the methods of
obtaining jurisdiction upon Missouri legatees who did not ap-
pear, nor the decisions of its courts defining the meaning of cer-
tain vital expressions used in the will, are put in evidence, the
case will be remanded, in order that proof of such statutes and
decisions may be made.

8. ———: *Construction of Will: Law of Domicile.* If the testator's
daughter, her only child and her husband were notified according
to law to appear in the court of the foreign state in which his
will was made and probated, then wherever the money willed to
her, to be invested according to limitations contained in the will,
was invested, the prior decree of said court construing the will
controlled the title of the investment. And if the notice was in-
effective, and the estates taken under the will by her and her
after-born child, and her husband after their death, must there-
fore be ascertained without reference to the decree, still the de-
termination of their estates should be according to the law of
the testator's domicile.

9. ———: *Estoppel.* Unless the remainderman was estopped to as-
sert title to the land, her father, who claims through her by in-
heritence, is not estopped.

10. ———: ———: *Joining in Deed: Minor.* The fact that a minor
daughter joined in a deed by which land devised to her mother
and the heirs of her body, and in case she died without issue,
to the mother's sisters, made fifteen years after a decree con-
struing the will was rendered, was not such recognition of the
decree as estopped her to assert title, as against such sisters, to
other land acquired by proceeds of the sale through a deed recit-
ing the terms of the decree in a suit of which she did not have
notice.

11. ———: ———: ———: *Nothing Done.* If parties who assert es-
toppel have done nothing on the strength of the recognition of a
decree of court by others who were not parties thereto, estoppel
is not available to them.

12. ———: ———: *By Deed.* A husband who joins his wife in a
deed is estopped by recitals therein to claim title through her
contrary to the effect of such recitals in the lands so conveyed,
but not in other lands.

Appeal from Platte Circuit Court.—*Hon. Alonzo D. Burnes,* Judge.

RESERVED AND REMANDED.

*Haff, Meservey, German & Michaels, Samuel D. New-kirk* and *Anderson & Carmack* for appellant.

(1) The court erred in admitting in evidence the decree of the Kentucky court construing the will. (a) Because there was no evidence that such court acquired jurisdiction of this defendant or Laura Park or Mary Park, as alleged in the petition. Roach v. Burns, 33 Mo. 319; Sevier v. Roddie, 51 Mo. 580. (b) Because the pretended notice to defendant of such suit by letter was not admissible under the pleadings, and such notice was insufficient and of no effect, both under the laws of Kentucky and the laws of this State. Murdock v. Hillyer, 45 Mo. App. 287; Preist v. Capatain, 236 Mo. 446; Stanton v. Thompson, 234 Mo. 7; Davis v. Montgomery, 205 Mo. 271; Schell v. Leland, 45 Mo. 289; Myers v. McRay, 114 Mo. 377; Tourville v. Wabash Railroad Co., 61 Mo. App. 527. (c) Because the plaintiffs in this suit were not adversary parties in the Kentucky suit to this defendant and those under whom he claimed. McMahen v. Geiger, 73 Mo. 145; State Bank of St. Louis v. Bartle, 114 Mo. 276; O'Rourke v. Lindell Ry. Co., 142 Mo. 343; 23 Cyc. p. 1279. (d) Because the decision of the Kentucky court cannot determine the title to real estate in Missouri. Applegate v. Smith, 31 Mo. 166. (2) The court erred in failing to find that Mary Park was seized of a vested estate and that Elihu Park is entitled to an undivided three-eights in the land by inheritance. Sec. 583, R. S. 1909; Cross v. Hoch, 149 Mo. 325; Small v. Field, 102 Mo. 104; Brooks v. Brooks, 187 Mo. 476; Griffith v. Witten, 252 Mo. 627; Sevier v. Woodson, 205 Mo. 202; Roth v. Rauschenbusch, 173 Mo. 582; Cornet v. Cornet, 248 Mo. 184; Tindall v. Tindall, 167 Mo. 218; Deacon v. St. Louis Union Trust Co., 271 Mo. 669; Armour v. Frey, 226 Mo. 646; Waddell v. Waddell, 99 Mo. 338; Chew v. Keller, 100 Mo. 362; Youcum v. Siler, 160 Mo.

281. (3) Defendant is not estopped by the recitals in the deeds. Shields v. McClure, 75 Mo. App. 631; Spurlock v. Sproule, 72 Mo. 503; Blodgett v. Perry, 97 Mo. 263; Crockett v. Morrison, 11 Mo. 3; Hempstead v. Easton, 33 Mo. 142. (4) The court erred in admitting in evidence the laws and statutes of Kentucky offered by plaintiffs. Flato v. Mulhall, 72 Mo. 522; Meyer v. McCabe, 73 Mo. 236. (5) The court erred in refusing to hold that the words, "die without issue," in the codicil, referred only to the death of Laura Park prior to the death of the testator. Dameron v. Lanyon, 234 Mo. 627; 40 Cyc. 1712.

*Guy B. Park* and *A. D. Gresham* for respondents.

(1) As an original proposition, the fair and reasonable construction of the will and codicil, so far as it relates to the interests of Laura Park and her daughter Mary Park-Thompson, is that Mary, having predeceased her mother, and Laura having died without issue living, the fee vests in her deceased sisters, or the children of her deceased sisters. R. S. 1909, sec. 2873; Gannon v. Pauk, 200 Mo. 75; Trust Co. v. Kirby, 255 Mo. 416; Collier v. Archer, 258 Mo. 383; Threlkeld v. Threlkeld, 238 Mo. 459; Armour v. Fry, 226 Mo. 646; Gannon v. Albright, 183 Mo. 238; Gibson v. Gibson, 239 Mo. 490; Monroe v. Collins, 95 Mo. 33; Haines v. Tolson, 73 Mo. 320; Cox v. Jones, 229 Mo. 53; Sullivan v. Garesche, 229 Mo. 476; Deacon v. Trust Co., 271 Mo. 669. (2) The defendant cannot question the title given by himself, or hold possession of the land in the face of his own deeds. Moss v. Ardrey, 260 Mo. 611; Orchard v. Store Co., 264 Mo. 563; Steel v. Culver, 158 Mo. 136; Herndon v. Yates, 194 S. W. 48. Nor can the consideration be inquired into by parol testimony. Pile v. Bright, 156 Mo. App. 301. (3) Where reliance is placed on a foreign judgment the presumption is that such court had authority to render the judgment in question, and that the necessary jurisdiction was acquired properly. Leiber v. Leiber, 239 Mo. 48; State ex rel. v. Williamson, 57 Mo. 192; Assurance Co. v. Waldron, 238 Mo. 61; Seymour v. Newman,

77 Mo. App. 578. Appellant apparently misconceives the purpose of the warning order under the statutes of Kentucky. The warning order under the statutes of Kentucky is itself the notice to and the service upon non-residents, just as publication of notice in a newspaper by the court clerk is service of notice to nonresidents under the laws of this State. Under the Kentucky statutes, this warning order is published by the clerk by writing it on the back of the petition, instead of publishing it in a newspaper. Bank of Kentucky v. Hunt's Heirs, 93 Ky. 75; Hoffman v. Brungs, 83 Ky. 405; Wilson v. Teague, 95 Ky. 47; Irish Bldg. & Loan Assn. v. Clemons, 78 Ky. 82; Brownfield v. Dyer, 7 Bush. 507. As a matter of comity, this court in construing that statute, will follow the rulings from the Supreme Court of Kentucky. Hand-lin v. Burchett, 270 Mo. 118. (4) Defendant and those under whom he claims having adopted the decree of the Kentucky court construing the will and having acted thereon and in accordance therewith, defendant cannot now question its validity, force or effect. McCune v. Goodwillie, 204 Mo. 306; State ex rel. v. Homer, 164 Mo. App. 354; Cochran v. Thomas, 131 Mo. 277; Gulick v. Huntley, 144 Mo. 249. (5) The title of Laura Park to the Platte County lands was acquired by funds from the sale of the 138 acres deeded to her by the master commissioner, appointed by the court in the Kentucky suit, and by the money distributed to her by the trustee appointed by the court in that suit. Through them, her grantors, she acquires title. One claiming title to land is bound by a decree rendered against his grantor in a former suit, as to all matters of fact and law which were in issue in the former case. Foote v. Clark, 102 Mo. 394. If a party cannot make out a title, but by a deed or other instrument which leads him to a knowledge of another fact, he shall be deemed to have knowledge of that other fact. Loring v. Groomer, 110 Mo. 641; Hagerman v. Sutton, 91 Mo. 533.

GOODE, J.—This action was instituted against eight defendants besides the appellant Elihu Park, for the partition of 445.76 acres of land in Platte County, Missouri. As all the other parties submitted to the judgment of the court below, the appellant will be spoken of as the defendant, and as he acquiesced in the judgment in so far as it affected twenty-nine acres of the total number of acres involved, that parcel will be understood as not included, unless specially mentioned, when we speak of the lands affected by the judgment.

Elihu Park was the husband of Laura Park, who died June 6, 1916, owning the lands in suit. They were married in Kentucky, where Mrs. Park resided, November 8, 1871, and immediately thereafter came to Platte County, Missouri, where they lived until 1914. One daughter, Mary Park, was born to them October 4, 1874. She married Stuart Thompson, and died June 4, 1900, in the lifetime of her mother, leaving no children or descendants surviving her. Before her marriage Laura Park was Laura Ragan (or Regan: the name is spelled both ways in the record), one of the eight daughters of William Ragan, of Montgomery County, Kentucky, who died in 1881, leaving a last will, which was admitted to probate in the County Court of Montgomery County, December 21, 1881. The will was signed, published and witnessed September 2, 1867; but a codicil was added April 20, 1871. The eight daughters, who were the only children of the testator, were living at the dates of the will and of the codicil; and six of them were then married; but Laura (after November 8, 1871, Laura Park) and Anna Eliza (later Anna E. Burchett, were unmarried. Portions of the will are not relevant to the points involved in the present appeal, except that they show the intention of the testator was to equalize the distribution of his estate among his daughters, and, with that statement o their effect, they will be omitted. The material parts are as follows:

"2nd. It is my will that my children Louisa Patterson, Mary C. Reid, Elizabeth Everett, Willie Benton, Sarah Bridges, Fannie Jones, Laura Ragan, Anna Eliza Ragan, shall have equally all my real and personal estate, but the lands shall belong to them and their children for their own separate use and benefit not subject to the control, debts or liabilities of their said husbands; and the same shall belong exclusively to my said daughters. It is my will that if any of my daughters should die, before or after I do, the portion so coming to my daughter to come to and belong to her child or children. . . .

"I will that my personal estate consisting of money, stock, bank stock, etc., shall be sold by my executors and be equally divided among my heirs, but the same shall be laid out in land by my executors, and the lands so purchased, with said money, shall belong to my daughters and their children for their separate use and benefit; but it is my will if my daughters Laura and Anna Eliza, or either of them are unmarried at my death, their portion of my personal estate shall not be invested in land, but the same put to interest by my executors, who shall manage the same and the interest paid annually to my said daughters, and this with their portion of my real estate (the rent thereof) I deem sufficient for their support, but after my said daughters' marriage, or before if they so desire, the said fund shall be vested in land as before named, my executor shall execute this trust, and the land so purchased shall belong to my said daughters exclusively, for their own use and benefit and their children.

"It is my will and desire that if the portion of land that falls to either of my daughters shall not be suitable to their condition, the same may be sold, but the proceeds invested in other lands, and no title pass to said land until the title to the land so purchased shall be vested in my daughters and her children, as aforesaid. . . .

"I hereby appoint and constitute Willis Bridges and N. P. Reid, my sons-in-law the executors of this my last will and testament.

"Given under my hand and seal this 2nd day of September, 1867.

"WILLIAM RAGAN (Seal).

"Attest.

"WM. HOFFMAN.

"JOHN W. CLAY."

The parts of the codicil which need to be considered are as follows:

"I desire to make this additional paper a codicil to the will executed by me on the 2nd day of September, 1867, and in the presence of Wm. Hoffman and John W Clay. The same to be taken and considered a part of said will.

"1st. My son-in-law Willis Bridges being in extremely poor health and not able to take upon himself the labors of settling up an estate I hereby revoke his appointment as one of my executors, leaving N. P. Reid my sole executor.

"2nd. My two younger daughters Laura and Anna Eliza Ragan being unmarried should either or both of them die without issue, I hereby will and bequeath her or their share of my estate to the surviving sisters and if any of them be dead, the children of such shall take their mother's share, under the same limitation and restrictions that the original will conveys their share to them, viz., that it is to be their sole and separate property and not subject to the debts or control of any husban.. they now have or may have hereafter.

"3rd. If I should decide upon dividing my lands out among my children the portion given to each is to be charged to her at such price as I shall fix upon it and if any one of my daughters gets more than her share of my estate she is to make the rest equal to her by refunding sufficient for that purpose. . . .

"Given under my hand and seal this 20th day of April, 1871.

"W. RAGAN.

"Attest.

"WM. HOFFMAN.

"B. A. SEAVER."

The executor named in the codicil refused to serve and so, on December 24, 1881, W. R. Patterson and W. H. Daugherty were appointed administrators with the will annexed. Said administrators and some of the persons interested as devisees and legatees provided for in the will, or as children of the devisees and legatees, filed a suit in the Circuit Court of Montgomery County, Kentucky, against the other persons interested as devisees and legatees, or as heirs of said legatees and devisees, for a partition of the lands whereof the testator died seized and which he had devised, and for a construction of the will in order to ascertain the interests of the various parties; also for the appointment of trustees to carry out testamentary directions, as far as trustees were required for that purpose.

Laura Park, her husband Elihu Park and her daughter Mary Park, who was unmarried and a minor at the time the suit was filed, were named as defendants. These defendants were neither residents of nor in Kentucky, but were residents of and in Missouri at the time the suit was commenced and there was no personal service of process on them. For that reason defendant Elihu Park asserts the decree rendered in the Kentucky case was not binding upon him or his wife Laura or daughter Mary, and does not affect the title to which he succeeded as the husband of his wife and as the heir of her and of his daughter in the lands sought to be partitioned in this action; but plaintiffs say defendant, his wife and their daughter Mary were made parties by constructive service obtained in accordance with the law of the State of Kentucky. At the foot of the petition in the Kentucky case, was this affidavit:

"State of Kentucky
Bath County
          "W. R. Patterson and W. H. Daugherty say the statements of this petition are true.
                              "W. R. Patterson
                              "W. H. Daugherty.

"Subscribed and sworn to before me by W. R. Patterson and W. H. Daugherty, March 14, 1882. "T. H. BROWN, Examiner Bath County, Ky."

The affiants were the administrators of the will of William Ragan.

On the back of the petition were the following notations:

"William Ragan's Administrators, etc.
v.      Petition in Equity
"Elizabeth Everett etc.
       "Filed in office and summons and sixteen copies issued to Montgomery County and summons and two copies issued to Fayette County. Warning Order entered and Atty Apdt. to defend.
"March 16, 1882.
                    JOHN R. P. TUCKER,
                         "C. M. C. C.
                    "Montgomery Circuit Court.
"William Ragan's Administrator, etc.      Plaintiffs,
          v.      Warning Order.
"Elizabeth Everett, etc.               Defendants,
"The defendants Laura Park, Elihu Park, Mary Park, Fannie Jones, J. H. Jones and W. Z. Jones
          "are
          "com
          "next
          "the
       "W. A. Wilson, a regular practicing attorney of this court appointed to defend said non-residents, and he hereby accepts said appointment.
       "Given under my hand as Clerk of the Montgomery Circuit Court, March 16, 1882.
                    "J. R. P. TUCKER,
                         "M. C. C. C."

This notation follows the last notation supra:

"The order appointing the Warning Order Attorney is mutilated and torn and the above is an exact copy as it now appears from said record now in my office.

"J. H. BLOUNT,
"Clerk Montgomery Circuit Court, Ky."

There was also an entry of record in the Kentucky case, under date May 25, 1882, that the attorney for the non-residents had filed a statement and was allowed five dollars to be paid and taxed as costs. The statement of the attorney is as follows:

"The atty. for the non-resident defts. herein, viz.: Laura Park, Elihu Park, Mary Park, Fannie Jones, J. H. Jones and William Z. Jones, states that he has written to said non-residents, duly informing them of the pendency of this suit; that he has received no reply to such communication from said non-residents, or any of them.

"Wherefore he knows of no defense to make to this action and sees no reason why judgment should not be made, and prays the court to protect the interests of said non-residents.

"WM. A. WILSON,
"Attorney for Non-residents."

A guardian *ad litem* was appointed for all the minor defendants, including Mary Park, *and the order recited that they all had been duly summoned in this action.* Said guardian *ad litem* answered denying knowledge of the truth or falsity of the allegations of the petition, admitting those beneficial to his clients and denying those that were prejudicial.

The portion of the decree material to the matter in hand is as follows:

"It is not the duty of the administrators to sell any of the land, which may be allotted to any of the devisees out of the testator's real estate, or to reinvest the proceeds in other lands, should the portion or portions allotted to any of the testator's children be not suitable to their condition or should they desire it sold and reinvested as provided by the will, but this court has power

and will appoint a trustee or commissioner for that pur-
pose, who will be required to be sworn and to execute
bond with good security to faithfully discharge his
duties. . . . Six of the testator's children, viz. Louisa
Patterson, Mary C. Reid, Sarah Bridges, Elizabeth Ever-
ett, Willie Benton and Fannie Jones, by the will take a
separate estate for life in their respective shares in the
testator's estate and testator's grandchildren by said
children take a vested remainder in fee in their respective
mother's share subject to her said life estate. Two of
the testator's children, viz: Laura Park and Anna Ragan,
take a separate estate for life in their respective shares
in the testator's estate, with the remainder in fee to the
respective issue should they leave any, but if either dies
without leaving issue, her share of testator's estate pass-
es to her surviving sisters in fee, or if any of them be
dead, the children of such take their mother's share in
fee.''

On June 5, 1882, a little more than a month after
the decree and at the same term of the Kentucky court,
William Mitchell was appointed trustee for Laura Park,
to collect her share of the personalty from the adminis-
trator of the estate and to reinvest the same in real estate
''with the title taken to said Laura Park for her separate
and exclusive use, free from the control of her husband
for and during her natural life and at her death the re-
mainder in fee to her child or children; but in the event
of the death of said Laura Park *without having issue,*
then the title to her share shall pass to her surviving
sisters in fee, or if any of them be dead, the children of
such to take their mother's share in fee—said trustee
will report his acts to this court in writing with a certi-
fied copy of such deed or deed as he may obtain in mak-
ing such instrument'' (sic). (Our italics.)

On December 14, 1882, at the November term of the
Montgomery County (Kentucky) Circuit Court, final
judgment in partition was rendered, confirming the re-
port of the commissioners theretofore appointed, which
report was that day filed, and showed the lands of Wil-

liam Ragan's estate had been divided by the commissioners among the devisees according to the decree of the court. The court in its final judgment confirming said report, made slight changes in it to equalize the interests of the various devisees, and directed John Jay Cornelison, who had been appointed master commissioner, to "execute deeds of partition conveying all the right, title and interest of the parties herein, legal and equitable, in accordance with the will of the testator as herein construed, for the respective lots as assigned a· , set in the report of division to the parties thereto entitled."The said master commissioner thereupon produced such deeds and they were acknowledged in open court, examined, approved and indorsed by the court and ordered to be recorded. The deed to Laura Park conveyed a parcel containing one hundred and thirty-eight acres of land, which had been set apart to her by the commissioners in partition, as her share of her father's real estate, and contained a *habendum* clause different from the provision in the order appointing Mitchell trustee, in that the land was to be held by Laura Park "for her sole and separate use and as her separate estate for and during her said life, not subject to the debts of her present or any future husband, with remainder in fee to the issue of her body, if she have any, but if she dies *without leaving issue,* the remainder in fee to pass to her surviving sisters, or if any of them be dead, the children of such to take their mother's share in fee." (Our italics.) (The order appointing Mitchell said, "without *having* issue").

The same land so conveyed to Laura Park, was conveyed by her, and Elihu Park, her husband, and their daughter Mary (then Mary Thompson) and her husband Stuart Thompson, and H. B. Kinsolving, the trustee, selected by Laura Park to act under the will of her father, to Anna E. Burchett, formerly Anna E. Ragan, the daughter whose interest in the lands depended, as did Laura Park's, on the codicil to their father's will. This conveyance was dated December 31, 1897, and contained the

same *habendum* clause as the one contained in the deed from the master in chancery to Laura Park. With the proceeds of this land and of Laura Park's interest in the personal estate of her father, William Ragan, the land involved in the action at bar was purchased, except the aforesaid twenty-nine acres; and Elihu Parks says, except ninety-one acres more, for which he claims he paid part of the purchase price.

All but one or two of the deeds (which followed the language of the order appointing Mitchell) conveying to Laura Park the lands involved in the present case, that were acquired from different vendors, contain this recital: "The consideration paid for this deed is part of a trust fund arising from the will of William Ragan, late of Montgomery County, Kentucky, who was the father of Laura Park, and said land by the terms of said will, is her separate estate for life, with remainder in fee to her issue, should there be any; *but if she dies with-out leaving issue,* to vest in her surviving sisters in fee, or if any of them be dead, the children of such to take their mother's share in fee." (All italics ours.)

One of the deeds was made by the defendant, Elihu Park, directly to his wife Laura. It conveyed one hundred and sixty acres of land, recited a consideration of five thousand dollars and contained a *habendum* clause including the words "without leaving issue," immediately following the description of the land conveyed.

Another of the deeds, conveying land in Missouri to Laura Park (namely the deed wherein Oscar Wells was grantor) contained a *habendum* clause in this language: "To have and to hold the premises aforesaid with all and singular the rights, privileges, appurtenances and immunities thereunto belonging or in anywise appertaining unto the said party of the second part as her exclusive, separate estate, free from any debts or interest or control of her present or any future husband, for life, with remainder in fee to her issue, if any survive her; if not, then to her sisters surviving her and the children of such as may be dead, forever."

The court below in its decree in the present case, ascertained the respective interests in the lands in controversy of the various parties to the action, but those findings need not be given except as they concern the rights of Elihu Park. Putting aside the ruling regarding his interest in the aforesaid twenty-nine acres, about which there is no controversy, the court found the remaining 416.76 acres, at the death of Laura Park, descended to and became the property of the various plaintiffs and defendants according to their respective interests as found by the court; except that the defendants Elihu Park and Stuart Thompson, the surviving husband of Mary Park, who, as said, was the daughter of Elihu and Laura Park, were decreed to have no right, title or interest in said 416.76 acres or any part thereof.

In rendering this judgment the court below gave effect to the decree of the Montgomery County (Kentucky) Circuit Court, construing the will and ordering partition of the lands of Williams Ragan's estate, and held the Parks, husband, wife and daughter, were bound by said decree. Defendant, contending the decree was not binding on them, claims to own an undivided three-eighths in fee simple in the 416.76 acres, upon the following theory: that Laura Park took a life estate under the will of her father, with a vested remainder in her daughter Mary, after the birth of the latter. Mary Park married Stuart Thompson and died leaving him surviving; said Stuart under the law of Missouri inherited one-half of the interest of Mary Park in the lands in controversy; Laura Park, her mother, inherited one-fourth, and defendant Elihu Park the other one-fourth. At the death of the mother, defendant inherited one-half of her interest; that is, one-eighth, which, plus the one-fourth or two-eighths he had inherited from his daughter, vested in him an undivided three-eighths. He also claims that as there was issue born of his marriage with Laura Park, he is entitled to an estate by the curtesy in the undivided one-eighth of

Laura Park's interest, which passed to her collateral heirs.

This appeal was taken by him from the judgment.

Other facts will be stated, if necessary, in the course of the opinion.

We stated the facts in this case in full, for the purpose of disposing of the appeal on the merits. To do so it would be necessary to decide whether or not defendant, *Jurisdiction.* his wife and daughter, were affected by the decree of the Kentucky court, ascertaining and defining the interests of the wife and daughter under the will of William Ragan; an inquiry the answer to which depends on the sufficiency of the steps taken to give constructive notice to the Missouri defendants of the pendency of the suit. Whether the proceedings to give notice were adequate for that purpose is a matter controlled by the law of Kentucky and not by that of Missouri. [13 Ency. Law (2 Ed.), p. 991; Monroe v. Douglas, 4 Sandf. Ch. (N. Y.) 126; Hunt v. Mayfield, 2 Stewart, (Ala.) 124; Cassidy v. Leitch, 2 Abb. N. Cas. 315.]

The Circuit Court of Montgomery County was shown by a statute of Kentucky, which was put in evidence, to possess general, legal and equitable jurisdiction and to have cognizance of all cases not exclusively delegated to some other tribunal. [R. S. Ky. 1883, art. 8, sec. 1.] This being so, it will be presumed to have had jurisdiction of the subject-matter of the suit brought by the administrators of the will of William Ragan for partition of the lands belonging to his estate, the appointment of trustees needed to carry out the directions of the will regarding the estates devised to the daughters, the investment of the personalty in land, and for a construction of the will to make clear the duties of the administrator in carrying out the trusts the testator had created. [Butcher v. Brownsville Bank, 2 Kan. 70; Specklemeyer v. Dailey, 23 Neb. 101; Leach v. Linde, 70 Hun, (N. Y.) 145; 13 Ency. Law (2 Ed.), p. 997 and citations in notes.] All the property, both real and personal (the *res*), title to

which would be affected by the judgment in the suit, was before the court and in its territorial jurisdiction; but notice, either actual or constructive, to the parties interested, was essential to conclude them by a decree concerning their titles. [2 Freeman, Judgments (4 Ed.), secs. 556, 557, 611; Monroe v. Douglas, supra; Windsor v. McVeigh, 93 U. S. 279; Bradstreet v. Ins. Co., 3 Sumner, 594; Hassall v. Wilcox, 130 U. S. 493.] This rule has been applied in suits to partition lands when some of the owners were non-residents of the states where the lands lay and the suits were brought. [Kreiger v. Sonne, 151 Ky. 739; Mason v. Messenger & May, 17 Iowa, 261, 270.] But though notice is required, actual notice is not. [Cases supra.]

The plaintiff introduced in evidence certain sections of the Kentucky statutes to show constructive notice of the suit in the Montgomery Circuit Court was given to the three Park defendants therein; and plaintiffs have cited in their brief certain decisions of the **Constructive Notice: Proof** Court of Appeals of Kentucky construing the statutes providing for a warning order to non-residents; construing also the appointment of an attorney "to make diligent efforts to inform" said defendants "by mail concerning the pendency and nature of the action against" them, as one of the statutory provisions reads. This method of notifying non-residents of litigation to which they were parties, took the place in Kentucky, at the time of the suit in Montgomery County, of notice by an order of publication, and the steps prescribed must have been followed substantially for the notice to be effective. [Carr's Admr. v. Carr, 92 Ky. 552] Sections 57, 58 and 59 of Bullitt's Code of 1883, were proved; but Section 60, which the Kentucky decisions hold fixes and determines the moment when jurisdiction is completely acquired by following the steps prescribed to notify a non-resident, was not proved. Nor were any of the decisions of the Kentucky Court of Appeals, which have adjudicated the effect of said statute, put in evidence, or their doctrines otherwise proved; and no stipulation was

made that the relevant law of Kentucky might be noticed without proof of it. The question of whether there was notice to the Missouri defendants of the suit, if it should be decided without the aid of the omitted Kentucky law, would be answered in the negative.

The statement filed by the warning attorney of what had been done did not show he had made diligent efforts to inform the Missouri defendants by mail of the pendency of the action, or that he had made *any effort to inform them of its nature;* but merely said he had written to them of the pendency of the suit and had received no reply. Nor did the statement say where he had addressed his letter, though Section 58 of Bullitt's Code provided that, in the affidavit required to be made by the plaintiffs in a suit in order to obtain a warning order, should be stated the post office nearest the place where said defendants resided; no doubt for the purpose of having the warning-order attorney communicate with them by correspondence addressed to that post office. Other sections of the Kentucky statutes bearing upon *when* the Montgomery court acquired jurisdiction of the Missouri defendants so as to bind them by its decree, and the decisions construing those statutes, were they before us, might show jurisdiction had been obtained so far as to make the decree good against attack in this collateral action. As to that we cannot decide in the condition of the present record.

Not only is the record deficient in the evidence needed to pass upon the question of jurisdiction, but no statute of Kentucky or other evidence of the law prevailing there, was put in evidence to elucidate, per-

Decisions.

chance, the meaning of the words "die without issue," and "die without leaving issue;" yet the effect of William Ragan's will and of the Kentucky decree construing it, may depend on the meaning of said words as defined in the law of that state. This controversy ought to be determined by said law; for the testamentary dispositions made by William Ragan, presumably, were made with the law of his domicile in mind and his inten-

tions should be ascertained in the light of it. [Ford v.
Ford, 70 Wis. 19, 5 Am. St. Rep. 117; Staigg
**Law of Domicile.** v. Atkinson, 144 Mass. 564.] Although we
would be justified, perhaps, in deciding the
case according to our own law, we have concluded to re-
mand it to the court below for a retrial, in order that the
parties, if they desire, may make proof of any Kentucky
statute or decisions which bear upon the questions in-
volved.

The plaintiffs say Laura Park took by her father's
will, either a life estate, or at most a defeasible fee which
terminated when she died without leaving surviving is-
sue; that therefore, regardless of the decree of the Mont-
gomery Circuit Court, at Laura Park's death, her daugh-
ter having pre-deceased her, the limitation over in the
codicil to her surviving sisters and the heirs of any sister
who was dead, took effect. We are cited to several Mis-
souri cases supposed to support that proposition. We
will not undertake to decide whether they do or not, but
again say the matter should be determined by Kentucky
law. The property disposed of by the will in favor of
Laura Park was land and personal property directed to
be invested in land for her when she married, or before,
if she desired. This was an imperative direction and left
the executors, or whosoever should execute the testa-
mentary trust, no discretion. It was a conversion of the
personal assets into land; at least upon Laura Park's
marriage. And in fact the personalty actually was in-
vested in land. If she, her daughter and husband were
notified constructively of the Kentucky suit, then where-
ever the proceeds of the property willed to her were in-
vested, the decree in the suit controlled the title to the
investment. [Monroe v. Douglas, 4 Sandf. Ch. (N. Y.)
126.] But even if the decree was not binding, and the
estates taken by her and her daughter under the will must
be ascertained without reference to it, the determination
as said above, should be according to the law of th'
testator's domicile.

. The proposition is asserted that defendant is estopped to deny the Kentucky decree is controlling as to his interest in the lands in controversy, even if the notice attempted to be given therein to him, his wife and daughter was not effective. If that position is well taken, the decree ought to be given effect regardless of the question of notice. Whether or not it is well taken, turns on what was done by Mary Park subsequently to the decree, although plaintiffs say it turns, too, on what defendant and his wife Laura did. We have shown, in stating the facts of the case, that two-eighths of the title claimed by defendant is as a direct heir of his daughter Mary and one-eighth is as the heir of his wife, to one-half of a two-eighths interest alleged to have been inherited by his wife from their daughter. He also claims an estate by the curtesy in the other one-eighth interest his wife is alleged to have inherited from the daughter. Therefore the entire estate claimed by defendant is derived, either immediately or mediately, from Mary Park; and unless said Mary was estopped herself to deny the binding force of the Kentucky decree as regards her estate in the lands involved in this action, the defendant is not estopped by reason of privity with her—is not estopped to claim partly by direct inheritance from her and partly from his wife, who had inherited from her. The fact relied upon to raise an estoppel is the sale and conveyance of the 138 acres of Kentucky land conveyed to Laura Park by John Cornelison, master commissioner, as the portion of the lands of the estate of William Ragan allotted to Laura Park by the commissioners appointed to make partition among the devisees of said testator. This land was sold to Anna E. Burchett and conveyed to her by a deed executed by H. B. Kinsolving, the trustee appointed to execute, for Laura Park, the power conferred in William Ragan's will to dispose of the land devised to any of his daughters, if it became unsuited to her condition in life, and to reinvest the proceeds in other land. Elihu, Laura and Mary Park (then Mary Thompson) and her husband Stuart Thompson, joined

**Estoppel.**

with the trustee Kinsolving in the execution of the deed to Anna E. Burchett. The land was conveyed fifteen years after the date of the Kentucky decree. Mary Park was a minor when the decree was rendered. Assuming that Mary Park was not notified of the suit by the warning order and hence was not bound by the decree, then, if there was no estoppel to prevent her from asserting her interest in her grandfather's estate, defendant stands in the same position in that regard, as he himself did nothing except to sign said deed to enable his wife to pass her title. [Gill v. Fauntleroy's Heirs, 8 B. Mon. 177.] We hold the fact that Mary Park joined in the deed conveying the Kentucky lands did not estop her (as against the other devisees in the will) to deny that the decree defining her mother's interest and her interest, determined her interest in the Missouri lands purchased with the proceeds of her mother's portion of the property, real and personal, of William Ragan's estate. When Mary Park signed said deed, probably she knew of the decree; but the act relied on was too slight and remote a recognition of the decree, if a recognition at all, to raise an estoppel. Moreover, it nowhere appears anything was done by the parties who claim against defendant in the present case, or those under whom said parties claim, on the strength of Mary Park having joined in said deed, which would be prejudicial to the present claimants against Elihu Park were it not held Mary Park, and defendant Elihu, in asserting a title derived from her, were estopped to dispute she was bound by the decree. [State v. Laies, 52 Mo. 396.] If she was not constructively a party to the Kentucky suit, then her title and interest in the land in controversy here, should be ascertained by an independent construction of the will, but, as said above, according to the law of the testator's domicile.

The case of McCune v. Goodwillie, cited by plaintiffs, is not apposite; for there the court held an Ohio judgment determined the rights of the parties to the suit in Missouri lands, because, if some of the parties had not been brought before the Ohio court (and really

it was held they had been) they had all made partition among themselves in pursuance of the Ohio decree (204 Mo. 306, 336). There was no partition among the devisees of William Ragan to carry out the the findings of the Kentucky decree; but only a sale of Laura Park's land to Anna E. Burchett.

Possibly defendant is estopped by the recitals in the conveyance he made to his wife of some parcels of the lands involved in this action, *to assert an interest in those parcels,* contrary to the effect of his recitals; but this question, as well as what the effect is, should be reserved for decision after the Kentucky law is proved, as the 'force of some of the recitals turns on that law.

The judgment is reversed and the cause remanded. All concur except *Woodson, J.,* absent.