NOLAN, EXR., ET, PLAINTIFF, *v.* BORGER ET, DEFENDANTS.

Probate Court, Montgomery County.

No. 159115. Decided November 1, 1963.

226

*Messrs. Harshman, Young, Colvin & Alexander*, for defendants, Lena Renner and Estate of George Reichert.
*Mr. Hugh Tankersley*, for defendant, Essie Borger.
*Messrs. Nolan, Wolff & Sprowl*, for the executor.

ZIMMERS, J. This cause is before the Court upon the Petition for construction of the Will of Henry E. Borger, deceased, by Nicholas F. Nolan, Executor of said decedent's estate; the Answer and Cross-Petition filed on behalf of the estate of George Reichert, deceased, and Lena Renner, defendants herein; the Answer and Cross-Petition filed by Essie Borger, defendant; the Briefs filed by counsel on behalf of the aforementioned parties and the evdience. Of the designated defendants the following are not before the Court by process or by virtue of an appearance and are, therefore, not bound by the judgment herein: Marie Reichert, Francis Adolph Reichert or Arthur E. Harter, Jr., Attorney in Fact for Francis Adolph Reichert, and Rev. Urban J. Stang.

The record shows that Henry E. Borger died on September 2, 1961, and that his Last Will and Testament was admitted to probate in this Court on September 11, 1961, at which time the petitioner was appointed executor of said estate. Clara Herman and Adolph Reichert, devisees named in said Will, pre-deceased the testator. George D. Reichert, who is named in the Will, died on June 2, 1962, therefore surviving the testator, and his estate is represented herein by Mary Katherine Kane and Margaret Cecelia Paszkiewicz, co-executrices thereof. Items IV, V, VI, VIII and IX of the Will of Henry E. Borger, deceased, are as follows:

"*ITEM IV*. My real estate located at South Illinois and Monroe Streets, in Carbondale, Illinois, being an undivided one-half interest therein; and by undivided one-third interest in my farm in Jackson County, Carbondale Township, Illinois, I give, devise and bequeath to my sister-in-law, Essie Borger, of Carbondale, Illinois, for and during her natural life, and upon her decease to the issue of her body, share and share alike. Said Essie Borger is to have the income from said property to pay all taxes, assessments and upkeep of said property."

"*ITEM V*. The funds I have on deposit at the Gem City Building & Loan Association, Dayton, Ohio, being Account No. 22,474; and funds in the Citizens Federal Savings & Loan Association, Dayton, Ohio, being Account No. 0-22608; my Postal Savings funds; the United States bonds, Series E, in the approximate sum of $5,500.00, and which bonds I received from my wife, Katherine J. Borger; and my two-thirds interest in my farm in Marysville, Nodaway County, Missouri, I give, devise and bequeath to the brothers and sisters of my wife, namely; George Reichert, of St. Louis, Missouri; Clara Herman of Freeburg, Illinois; Adolph Reichert of St. Louis, Missouri; and Lena Renner of Belleville, Illinois, to be theirs absolutely, share and share alike."

"*ITEM VI*. The household furniture in my residence at 19 Pelham Drive, Van Buren Township, Ohio, I give and bequeath to my sister-in-law, Essie Borger, and the brothers and sisters of my wife, namely: George Reichert of St. Louis, Missouri; Clara Herman of Freeburg, Illinois; Adolph Reichert of St. Louis, Missouri; and Lena Renner of Belleville, Illinois, to be theirs absolutely, share and share alike."

"*ITEM VIII.* All the rest and residue of my estate of whatsoever nature and wheresoever situate, including my residence property in Dayton, Ohio, I request and direct that my Executor convert all the residuary of my estate into cash and after deducting the necessary expenses of sale, I give, devise and bequeath the same to my sister-in-law, Essie Borger, and the brothers and sisters of my wife, namely: George Reichert of St. Louis, Missouri, Clara Herman of Freeburg, Illinois; "Adolph Reichert of St. Louis, Missouri; and Lena Renner of Belleville, Illinois, share and share alike."

"*ITEM IX.* I hereby nominate and appoint Nicholas F. Nolan as Executor of this, my Last Will and Testament, and I direct that he be permitted to serve in such capacity without bond. I direct and request my said Executor in the administration of the estate to consult and advise with my sister-in-laws, Essie Borger of Carbondale, Illinois, and Lena Renner of Belleville, Illinois as to all sales of assets. I further empower my said Executor to sell, in whole or in part, any realty or personalty owned by me at the time of my death, at public or private sale, without order of Court and at such prices and upon such terms as in his judgment may seem wise and for the best interests of my estate, hereby empowering and authorizing my said Executor to execute and deliver any deeds, bills of sale or other necessary instruments to complete said transaction in the same manner as I could do, if living. I further authorize my said Executor to compound, compromise, settle and adjust any and all claims against my estate or due to my estate as he deems best."

The evidence shows that the real estate mentioned in Item IV was sold by the decedent before his death and that the real estate mentioned in Item V came to the testator from his wife who predeceased him.

At bar the parties have stipulated that the reference to Series E bonds in Item V applies to bonds which were in the name of Katherine Borger alone on the date of her death. These had a total face value of $5,250.00, and the parties have further stipulated that certain bonds in Henry E. Borger's estate, having a total face value of $3,200.00, are re-issues of the former bonds and that the latter bonds, therefore, pass under Item V of his will. The balance are admittedly adeemed. It has been

stipulated that all other government bonds in Henry E. Borger's estate pass under the residuary clause.

The basic question before the Court is the effect of the death of two of the named legatees and devisees in the will prior to the death of the testator herein upon the distribution of the testator's estate as required by his will. The real estate devised in Item IV of the testator's will was admittedly sold before the death of the testator, and there being no postal savings in his estate as described in Item V no issue of the ademption thereof is presented.

The respective parties have agreed that the gifts in Item V are class gifts. The Court agrees with the agreement of counsel on this issue but will establish its holding since the title to real estate is involved and it was asked to render judgment thereon in the pleadings.

The cardinal rule to follow in a will construction case is to ascertain the intention of the testator. This intention is determined from the words used in the will and construction from the four corners. There is no fixed rule applicable to the construction of wills. All rules of construction are useful or applicable only insofar as they aid in arriving at the correct construction as to the intention of the testator.

It has been written by outstanding jurists and other learned scholars of the law that a will has no brother. In following this truism this Court, in the construction of a particular will before it, has often pondered the paradox that a layman or testator is presumed to know the law, including statutes, judicial interpretations and the law's effect on the devolution of an estate—*Flynn, Administrator* v. *Brebbeck*, 147 Ohio St., 149, while in a will construction or other difficult question of law the Court and counsel representing the legatees and devisees or next of kin and heirs spend hours or days in research, following the doctrine of Stare Decisis to find a determination by the Court of last resort in a case in which the same or similar language was used. Yet the Court fully realizes that in nearly all cases the instrument that presents the problem is not a holographic will executed in accordance with the statutes of the state, but is one which we know was composed, framed, written and punctuated in the language of the scrivener and

signed by the testator after reading the prepared instrument in counsel's office.

In Item V of the will at bar the testator has both designated the individual beneficiaries therein as a class, to-wit: "to the brothers and sisters of my wife," and he has named them as individuals. In *Jewett* v. *Jewett*, 21 O. C. C., 278, affirmed without opinion in 67 Ohio St., 541, the rule in such case has been stated as follows:

"This clause, like many such testamentary provisions, described the residuary legatees in two ways, each of which, taken by itself, has a well settled legal effect quite different from the other. It describes them by name, which makes a bequest to them as individuals, so that if one dies without issue before the testator, the legacy to him fails. It also describes them as nephews, i. e., as a class, which makes a bequest to such of the class as are capable of receiving it when the bequest takes effect, (sic) when both descriptions occur, *with nothing more to show the testator's intent.* (sic) The construction is that the gift by name constitutes a gift to individuals to which the class description is added by way of identification." (Emphasis added.)

It is a well established rule that when the Court construes a will from the four corners, it must insofar as possible place itself in the place of the testator and may take into consideration all of the facts and circumstances surrounding the testator at the time of execution of the will. See numerous cases cited in 56 Ohio Jurisprudence (2d), Section 522 on Wills and *Jewett* v. *Jewett, supra.*, at page 281.

This Court is of the opinion that, although the rule announced in *Jewett* v. *Jewett, supra,* is applicable in the case at bar, the result is different because the facts here clearly established *something more* to show the testator's intent to create a class gift. The facts and circumstances surrounding the testator at the time of his death show that he intended to return at least part of a certain class of property, i. e. that which was received from his wife, to a class of individuals, i. e., the brothers and sisters of his wife. It must be admitted that there is no probative evidence in the record to establish the origin of the Savings and Loan accounts. Although testator received postal savings from his wife's estate, there are no postal sav-

ings in his estate. However, the government bonds and the real estate situated in Missouri have clearly been established to have come to the testator from his wife by his own declaration in his will and by evidence produced at the hearing herein. The Court, therefore, finds that the testator intended the gifts in Item V to be class gifts and the shares of the members of the class predeceasing the testator, therefore, pass to the members of the class surviving the testator. See 56 Ohio Jurisprudence (2d), on Wills, Section 857, and the cases cited therein.

This Court has cited only Ohio authorities on this question and the further question might arise as to whether the construction by this Court applies to the Missouri real estate mentioned in Item V. This is a problem of choice of law within the rules of conflict of laws and the Court believes it necessary to comment thereon because the title to real estate is involved.

In the several states of the United States there appears to be conflicting authority as to which law governs in the construction of testamentary language purporting to devise real estate located in a sister state. Ohio has adopted the conflict of laws rule that the law of the situs applies. See *Jennings* v. *Jennings*, 21 Ohio St., 56, and *Ives* v. *McNicoll*, 59 Ohio St., 402, and Page on Wills, Boe-Parker Revision, Section 60.6, page 451. This would seem to require Missouri law to be examined with respect to the language necessary to create a class gift as to the parcel of realty mentioned in Item V. Missouri's conflict of laws rule, however, requires the law of domicile (in this case Ohio law) to be considered when construing language in a will in which Missouri real estate is devised. See *Jones* v. *Park*, 282 Mo., 610, 223 S. W., 1018; *Zombro* v. *Moffett*, 329 Mo., 137, 44 S. W. (2d), 149; *Bernheimer* v. *First National Bank*, 359 Mo., 1119, 225 S. W. (2d), 745 and 746, and Page on Wills, Boe-Parker Revision, Section 60.5, page 455.

In order to avoid the circular problem of "Renvoi" the most accepted "conflict of laws" rule is that the Court of the forum will only look to the internal law of the "choice of law" state (or Missouri law). 9 Ohio Jurisprudence (2d), on Conflict of Laws, Section 11, page 668. This rule would require this Court to examine only the internal law of Missouri and to ignore the reference back to Ohio law which is one of Missouri's "conflict of laws" rules. One of the exceptions to the rule that

only the internal law is to be considered is the case in which title to real estate is involved. See 9 Ohio Jurisprudence (2d), on Conflict of Laws, Section 11. In that event, which is our case at bar as to the Missouri real estate in Item V, the Court of the forum looks to the whole law of Missouri and in order to avoid the circular problem, it decides the case as if it were sitting in the "choice of law" state, namely Missouri. This Court is of the opinion that its construction of Item V herein must be based upon the Ohio rules of law in construing language to determine if a class gift exists because the Missouri court would have done so if it were deciding this case.

This Court wishes to add that the rule of the exception seems to be the better rule because the result is the same regardless of the forum. If the "conflict of laws" rule *and* the "internal law rule" on the issue being decided are conflicting in the two states involved, the result of the case can be controlled by filing the suit in the state which will apply the internal law to effect that result. The general rule, which requires only the internal law of the "choice of law" state to be applied, would in that case result in different judgments, depending upon the forum of the law suit.

The principal issue in the case at bar and the one most extensively briefed by counsel is whether the gifts in Item VI and VIII are gifts to all of the individuals therein named or whether the brothers and sisters of the testator's predeceased wife were considered therein to be a class to receive one-half of the property disposed under said items and, Essie Borger, the widow of one of the testator's deceased brothers, is to receive the other half. The problem of construction, however, is the same, to-wit: what is the testator's intent in a case in which he both describes individuals who would constitute a class and also names them as individuals. The Court is of the opinion that the same rule above applied in Item V applies to the issue now under consideration. If this Court cannot find *something more* in the will or the surrounding circumstances to indicate that the testator intended the brothers and sisters of his predeceased wife to be treated as a class in Items VI and VIII, it must be found that he intended to make gifts to the individuals therein named, per capita, as held in *Jewett* v. *Jewett, supra.*

Counsel for Essie Borger contends in his brief that because the testator made specific gifts in Items IV and V he "must have intended that the property he received from his wife would go to or be given to the brothers and sisters of his deceased wife, and the property received from his side of the family would go to his brother's widow and her children, *with the property acquired by him during his lifetime to be divided equally between the two sides of the family."* (Emphasis added.) With the statements in the first two clauses of the above quotation the Court agrees, but the Court cannot agree with the conclusion in the emphasized clause. It does not necessarily follow from the first two statements that the testator intended his uninherited property to be divided equally between the two sides of the family. Counsel for Essie Borger continually refers throughout his brief to the preference of Essie Borger manifested by the whole will of the testator. This Court is of the opinion that if the testator indicated any preference of Essie Borger, it was over the other relatives of the testator who were shown by the facts and circumstances admitted in evidence to have existed and to have been completely ignored in his will. From the wording of the whole will at bar and from the evidence submitted as to surrounding facts and circumstances this Court can find no indication that the testator intended to prefer Essie Borger as an individual over any one of the brothers and sisters of his predeceased wife with respect to the uninherited property acquired by him during his lifetime.

Counsel for Essie Borger contends that because the testator mentioned his client and one of the brothers and sisters of the testator's predeceased wife as consultants before the sale of any property could be made, it must be concluded that he intended a half and half distribution in Items VI and VIII. Examining the whole will the Court does find that there are in fact two classes or branches of beneficiaries as hereinbefore discussed. The Court is of the opinion that it does not necessarily follow, however, that because the testator designates one person from each branch as consultant, he intended a half and half division of his property to the two branches.

Counsel for Essie Borger also contends that giving effect to the punctuation in the will, it is evident that the testator intended a half and half division. As counsel points out, the

colon indicates a list and the Court is of the opinion that nothing further can be construed from the use of the colon in Items VI and VIII. There is no punctuation in said items which indicates that the testator intended two classes to be construed from a dispositive standpoint. The testator's scrivener has used language whereby all beneficiaries in the testator's will were both described in their relationship to him and as individuals. The colon was employed by virtue of the fact that one of the descriptions contained a list or was applicable to a number of individuals.

Counsel for Essie Borger also contends that a rule of the construction requires that where reoccurring phrases are used in a will, the testator must have intended to use the phrases with the same purpose, unless the context in which phrase is used makes it evident that a different meaning was intended. The statement of the rule is incomplete as this Court finds by investigating the authorities. The material portion of the rule omitted by counsel's reference thereto is that the reoccurring phrase must be used in conjunction with the *same subject matter*. See *Rugg* v. *Smith*, 40 Ohio App., 101, 9 Ohio Law Abs., 718; *Walker* v. *Walker*, 20 O. C. C., 409 at page 415 and 56 Ohio Jurisprudence (2d), Wills, Section 574 at page 109. Since the testator was disposing of different property in Item V, it does not follow that the use of the same phrase in a later item or items in which different property was being disposed of must be similarly construed.

The portion of the rule omitted by counsel is a material portion as can be seen by examining its effect on the will at bar. If this Court would have construed the use of the phrase under discussion in Items VI and VIII first, and then applied its construction thereof to Item V, the Court would have to ignore the surrounding facts and circumstances which clearly indicate that the testator intended the property disposed of in Item V to go to the brothers and sisters of his predeceased wife as a class. In Items VI and VIII the testator is not returning to his wife's relatives property which he received from her and the same reasoning does not apply. To reiterate, this Court does not find ''something more'' in the facts and circumstances surrounding the testator or in the language employed in Items VI and VIII of the will which would indicate intent to give a class

gift. It would indeed be a weak rule of will construction if, depending upon which item of the will the Court construed first, the reoccurring phrase could be given two different constructions. The requirement that the rule apply only in the cases where the same subject matter is under consideration eliminates this weakness.

The precise question now being considered by this Court is discussed with citations in Page on Wills, Lifetime Edition, Section 1083. There are no references to Ohio or Missouri cases therein and it must be concluded that there is no fixed rule established by the authorities throughout the United States. After the author cites a number of cases holding that in such event courts prefer a per capita distribution, he states: "The rule that such a gift imports a per capita distribution is said to be a technical one, which is subject to many exceptions, and one which is disregarded more often than not," and cites additional cases. He states at page 293 that a direction for equal distribution or a distribution share and share alike, as contained in the will at bar, is usually held to strengthen the inference that a per capita distribution was intended. This Court is of the opinion that the latter line of reasoning is begging the question to be decided, i. e. did the testator intend the individual and the group to share and share alike or did he intend all of the individuals named to share and share alike? Thus the authorities outside of Ohio have not been too helpful to this Court in the case at bar.

This Court finds from the foregoing that the testator intended the gifts in Items VI and VIII to be gifts to individuals and, therefore, those beneficiaries named in Item VI who predeceased the testator, not being relatives of the testator, lapse and pass into the residuary estate. Since these same beneficiaries are again named in the residuary clause, their residuary share must be divided among the surviving residuary beneficiaries per capita. See *Commerce National Bank of Toledo, Trustee* v. *Browning* (1952), 158 Ohio St., 54, 107 N. E. (2d), 120.

An entry may be prepared accordingly, with costs to the estate.