WILLIAM ZOLLIE JONES et al. v. CHARLES CLIFFORD PATTERSON et al.; ELIHU PARK and STUART THOMPSON, Appellants.

Division Two, March 19, 1925.

1. **JURISDICTION: Of Foreign Court: Non-Resident: Warning Order: Collateral Attack.** A transcript of the record of a court of Kentucky, duly authenticated, and showing the appointment of an attorney to represent a non-resident devisee in a suit to construe a Kentucky will, and showing the issuance of a warning order to said non-resident, although said order itself has been mutilated and torn, and showing a judgment reciting that she was made a party and duly summoned, together with prior statutes of Kentucky declaring, among other pertinent matters, that "a defendant against whom a warning order is made and for whom an attorney has been appointed shall be deemed to have been constructively summoned on the thirtieth day thereafter, and the action may proceed accordingly," and the decisions of the Court of Appeals of Kentucky ruling in similar cases that such appointment and warning order gave the court jurisdiction of such non-residents, are sufficient, after twenty-eight years and in a collateral proceeding in this State,

to support a judgment that said Kentucky court had jurisdiction of said non-resident devisee, and makes binding on her the judgment of said court construing said Kentucky will.

2. ———: ———: Estoppel: Acceptance of Benefits. The acceptance by the non-resident devisee and her husband of land alloted to her and her share of the personal estate upon the terms, conditions and limitations of the decree of a Kentucky court construing a Kentucky will, operated to estop them from attacking the jurisdiction of said court over them, whether or not, by intervention or defective service, they became parties to said suit. Upon plainest principles of justice a devisee cannot accept the benefits and repudiate the judgment through which he acquires the land of testator's estate.

3. WILL: Die without Leaving Issue: Right of Strangers to Blood. According to the decisions of the Court of Appeals of Kentucky (Phoenix & Third Natl. Bank v. Cassell, 224 S. W. 1073), a Kentucky will devising land to testator's daughters, "to belong to them and their children for their own separate use and benefit, not subject to the control, debts or liabilities of their said husbands" and "if any of my daughters should die, before or after I do, the portion so coming to my daughter to come to and belong to her child or children," and should "either or both of my said daughters die without leaving issue, I will and bequeath her share of my estate to the surviving sisters, and if any of them be dead the children of such shall take their mother's share," meant, should a daughter die without leaving issue living at the time of her death, and a limitation to take effect at said daughter's death. The testator did not intend that the property devised to a daughter for life should pass or descend to strangers in blood in the event she died without leaving issue surviving her at the time of her death.

4. VENDOR'S LIEN: Limitations: Contrary to Declarations in Deed. The remedy of a husband who accepts the demand note of his wife in payment for land conveyed to her is by an action on the note to enforce a vendor's lien. But he is entitled to no such lien if more than ten years have expired since the last payment on the note was made, for then it is barred by limitations. Besides, he cannot assert such a claim if the deed recited that "the consideration paid for this deed is a part of a trust fund arising from the will of the father of the grantee, and by the terms of said will said land is her separate estate for life, with remainder in fee to her issue, should there be any; but if she dies without leaving issue, to vest in her surviving sisters in fee"—said grantee being dead.

5. IMPROVEMENTS. A husband is not entitled to reimbursements for improvements made on land subsequently conveyed by him to

his wife, or for improvements made on her land, in an action against her or her heirs, in the absence of a special agreement that he should be compensated therefor.

Citations to Headnotes: 1, Judgments, 34 C. J. 1618; 2, Estoppel, 21 C. J. 217, 225; 3, Wills, 40 Cyc. 1505; 4, Estoppel, 21 C. J. 68; Vendor and Purchaser, 39 Cyc. 1855; 5, Husband and Wife, 30 C. J. 539; Vendor and Purchaser, 39 Cyc. 1638.

Appeal from Platte Circuit Court.—*Hon. A. M. Tibbels,* Judge.

AFFIRMED.

*Haff, Meservey, Michaels, Blackmar & Newkirk* for appellants.

(1) The court erred in admitting in evidence any of the statutes or decisions of Kentucky relating to constructive service, offered by plaintiffs, which were not pleaded in plaintiffs' petition. Smith v. Smith, 206 Mo. App. 646; Mathison v. Railroad, 219 Mo. 542; Rhodes v. Land Co., 105 Mo. App. 279; Platt v. Parker Washington, 161 Mo. App. 669. (2) The court erred in admitting in evidence the decree and proceedings of the Circuit Court of Montgomery County, Kentucky, construing the will. (a) Because such court did not acquire jurisdiction of Elihu Park or Laura Park or Mary Park, nor were they notified of said suit as required by the laws of Kentucky. The pretended warning order was insufficient under the laws of Kentucky. No warning attorney was properly appointed and he did not notify or attempt to notify Elihu Park, Laura Park or Mary Park as required by the laws of Kentucky. Jones v. Park, 282 Mo. 610; Green's Heirs v. Breckenridge Heirs, 20 Ky. 348, 4 T. B. Monroe, 541; Brownfield v. Dyer, 70 Ky. 505, 7 Bush, 506; Carr's Administrator v. Carr, 92 Ky. 552; Berryman v. Mullins, 8 B. Monroe, 152; Tevis Representatives v. Richardson, 7 Mon. 655; Arthurs v. Harlan, 78 Ky. 138; Payne's Admr. v. Hardesty, 12 Ky. Law Rep. 336; Miller v. Hall, 19 Ky. (3 T. B. Mon.) 242; Jeffrey's

Heirs v. Hands Heirs, 37 Ky. (7 Dana) 89; Clark v. Raison, 104 S. W. 342; Warrich v. McCormich, 150 Ky. 800; Hyden v. Calames, 161 Ky. 593; First Natl. Bank v. Sanders Bros., 162 Ky. 374; Galpin v. Page, 85 U. S. 350, 21 L. Ed. 959; Cloud v. Pierce City, 86 Mo. 357.; 23 Cyc. 1577; Stanton v. Thompson, 234 Mo. 7; Priest v. Capatain, 236 Mo. 446; Davis v. Montgomery, 205 Mo. 271; Murdock v. Hillyer, 45 Mo. App. 287; Schell v. Leland, 45 Mo. 289; Myers v. McRay, 114 Mo. 377; Tourville v. Wabash Railroad Co., 61 Mo. App. 527; Bradley v. Welch, 100 Mo. 258; Eager v. Stover, 59 Mo. 87.; Marks v. Fore, 51 Mo. 69; Hester v. Frink, 189 Mo. App. 40; Banister v. Weber Gas. Co., 82 Mo. App. 528; Weith Hdw. Co. v. Land, 54 Mo. App. 147; Clark v. Ogilvie, 63 S. W. 429.   (b)   Because neither Elihu Park, Laura Park, nor Mary Park entered their appearance in said suit.   If Elihu Park and Laura Park had appeared in said suit, such action would not be binding upon these defendants who claim under Mary Park.   Jones v. Park, 282 Mo. 610.  (c)   Because the plaintiffs in this suit were not adversary parties in the Kentucky suit to these defendants and those under whom they claim.   McMahen v. Geiger, 73 Mo. 145; State Bank of St. Louis v. Bartle, 114 Mo. 276; O'Rourke v. Lindell Ry. Co., 142 Mo. 343, 23 Cyc. 1279.   (d)   The judgment in the Kentucky suit did not conclude the defendants here because the issues in that case were different from the issues in this case. (3)   The court erred in failing to find that Mary Park was seized of a vested estate and that Elihu Park is entitled to an undivided three-eighths interest in the land by inheritance and the owner of an estate by the curtesy in another one-eighth thereof and that the defendant Stuart Thompson is the owner of an undivided one-half of such land.   The court erred in admitting any of the statutes or decisions of Kentucky offered in evidence by plaintiffs.   Jones v. Park, 282 Mo. 610; Sec. 7, ch. 80, 2 Stanton's Revised Statutes of Kentucky; Sims v. Skinner's Executor, 118 Ky. 573; Middleton's Heirs v. Middleton's Devisees, 43 S. W. 677.; Kuhn v. Kuhn, 24 Ky.

112.; Thackston v. Watson, 84 Ky. 206; Wills v. Wills, 85 Ky. 486; Carpenter v. Hazelrigg, 20 Ky. 231; Burnam v. Suttle, 148 Ky. 495; Prewitt v. Prewitt, 178 Ky. 346; Harvey v. Bell, 118 Ky. 512.; Sevier v. Woodson, 205 Mo. 202.; Tindell v. Tindell, 167 Mo. 218; Deacon v. Union Trust Co., 271 Mo. 669; Kennedy v. Arthur, 3 Ky. Opinions, 466.; Martin v. Thompson, 229 S. W. 112.; Waddell v. Waddell, 99 Mo. 338; Chew v. Keller, 100 Mo. 362. (4) Defendants are not estopped by the recitals in the deeds. Jones v. Park, 282 Mo. 610; Shields v. McClure, 75 Mo. App. 631; Spurlock v. Sproule, 72 Mo. 503; State v. Laies, 52 Mo. 396; May v. Crawford, 150 Mo. 504. (5) The court erred in holding that Elihu Park was not the owner of an undivided interest in the ninety-one acres. (6) The court erred in holding that Elihu Park was not entitled to recover for improvements made on the land.

*A. D. Gresham* for respondents.

(1) The court did not err in admitting evidence of the statutes and decisions of Kentucky relating to constructive service offered by plaintiffs, which were not pleaded in plaintiffs' petition. (a) Because these matters in plaintiffs' reply were in answer to the new matter set up in the separate answers of defendants, Park and Thompson. Barron v. Store Co., 237 S. W. 786; Brown v. Conn. Fire Insurance Co., 195 S. W. 62. (b) Because the answer and cross-petition of Linda Benton et al., which plead all those statutes and decisions, properly raised the issue and made the testimony admissible. (c) Because it was stipulated that the evidence introduced on behalf of plaintiffs should be considered introduced on behalf of those defendants. (2) The decree and proceedings of the Circuit Court of Montgomery County, Kentucky, construing the will of William Ragan were properly admitted in evidence. (a) Because Elihu Park and Laura Park were properly notified of said suit as required by the laws of Kentucky and appeared therein

and filed answer, and filed exceptions to the action of that court in the partition proceedings. (b) Because Mary Park was notified of said suit as required by the laws of Kentucky, a sufficient warning order was issued, a warning-order attorney appointed to represent her and she was notified of said suit as required by the laws of Kentucky, and a lawfully appointed guardian *ad litem* filed answer for her and represented her in the proceedings. Sections 57, 58, 59 and 60, art. 2, Civil & Criminal Code of Practice of the State of Kentucky, revised and adopted by the General Assembly of Kentucky in 1883, being Sections 88, 89, 90 and 91 of the code in force immediately prior to 1882; Sec. 38, Art. 3, of said Code; Thomas v. Mahone, 9 Bush, 111; Newcomb's Executors, v. Newcomb, 13 Bush, 544; Carr's Admr. v. Carr, 92 Ky. 552; Wilson v. Teague, 95 Ky. 47; Sears' Heirs v. Sears' Heirs, 95 Ky. 173; Meddis v. Dellinger, 112 Ky. 500; Kreiger v. Sonne, 151 Ky. 739; Ball v. Poor, 81 Ky. 27; Northern Bank v. Hunt's Heirs, 93 Ky. 75; Ramsey v. Heith's Admrs., 25 Ky. Law Rep. 582; Atherton v. Warren, 120 Ky. 151. (c) The parties to this are the same parties, or their privies, as in the Kentucky suit, 107 Mo. 414. (d) Where reliance is placed on a foreign judgment the presumption is that such court had authority to render the judgment in question, and that the necessary jurisdiction was acquired properly. Leiber v. Leiber, 239 Mo. 48; State ex rel. v. Williamson, 57 Mo. 192; Assurance Co. v. Waldron, 238 Mo. 61; U. S. Constitution, sec. 1, art. 4. (e) The warning order under the statutes of Kentucky is itself the notice to and the service upon non-residents, just as publication of notice in a newspaper by the court clerk is service of notice to a non-resident under the laws of this State. Under the Kentucky statutes, this warning order is published by the clerk by writing it on the back of the petition, instead of publishing it in a newspaper. Northern Bank v. Hunt's Heirs, 93 Ky. 75; Hoffman v. Brungs, 83 Ky. 405; Wilson v. Teague, 95 Ky. 47.; Irish Bldg. & Loan Assn. v. Clemons, 78 Ky. 82; Brownfield v. Dyer, 7 Bush, 507.

(f)   The appointment of a warning attorney is made after the court acquires jurisdiction of the non-resident parties, by the making of the order of warning by the clerk.  "The words, 'if the defendant be constructively summoned,' mean only the making of the order of warning against him."  Cases cited in preceding paragraph. (g)   As a matter of comity, this court in construing that statute, will follow the rulings from the Supreme Court of Kentucky.  Handlin v. Burchett, 270 Mo. 114, 118.  (3)   The judgment of the trial court was correct under the laws of Kentucky, and under the laws of Missouri.  (a)   The fair and reasonable construction of the will and codicil of William Ragan, so far as it relates to Laura Park and her daughter, Mary Park Thompson, is that Mary Park Thompson having predeceased her mother and Laura Park having died without issue living, the fee vests in her deceased sisters, or the children of her deceased sisters.  Chap. 63, art. 1, sec. 9, General Statutes of Kentucky; Harvey v. Bell, 118 Ky. 512; Garr v. Elble, 16 Ky. Law Rep. 661; Lepps v. Lee, 92 Ky. 16; Craig's Admrs. v. Williams, 179 Ky. 329; Froman v. Froman, 175 Ky. 536; Williamson v. Williamson, 18 B. Monroe, 329; Lindenburger v. Cornell, 229 S. W. 54; Eakins v. Eakins, 229 S. W. 130; Birney v. Richardson, 5 Dana, 424; Bradshaw v. Williams, 140 Ky. 163; Hood v. Dawson, 98 Ky. 285; Webb v. Trustees First Baptist Church, 90 Ky. 117; Rice v. Rice, 133 Ky. 406; Phoenix & Third Nat. Bank v. Cassell, 224 S. W. 1073; Walton v. Bohannon, 150 Ky. 486; R. S. 1909, sec. 2873; Gannon v. Pauk, 200 Mo. 75; Trust Co. v. Kirby, 255 Mo. 416; Collier v. Archer, 258 Mo. 383; Threlkeld v. Threlkeld, 238 Mo. 459; Armour v. Frey, 226 Mo. 646; Gannon v. Albright, 183 Mo. 238; Gibson v. Gibson, 239 Mo. 490; Monroe v. Collins, 95 Mo. 33; Haines v. Tolson, 73 Mo. 320; Cox v. Jones, 229 Mo. 53; Sullivan v. Garesche, 229 Mo. 476; Deacon v. Trust Co., 271 Mo. 669.   (4) Defendants, Park and Thompson, and those under whom they claim, having adopted the decree of the Kentucky court construing the Ragan will, and having acted there-

on and in accordance therewith, cannot now question its validity, force or effect. McCune v. Goodwillie, 204 Mo. 306; Cochran v. Thomas, 131 Mo. 258, 277; Gulick v. Huntley, 144 Mo. 249. This case is now here under different pleadings, additional evidence and the Kentucky laws, not in the case of Jones v. Park, 282 Mo. 610. The pleadings clearly raise the question of estoppel. Hubbard v. Slavens, 218 Mo. 598, 619. (5) The defendant Elihu Park is not the owner of an undivided interest in the ninety-one acres. He cannot question the title given by himself or claim title to the land in the face of his own deed. Moss v. Ardrey, 260 Mo. 595, 611; Orchard v. Store Co., 264 Mo. 554, 563; Steel v. Culver, 158 Mo. 136; Herndon v. Yates, 194 S. W. 48. (a) Nor can the consideration be inquired into by parol testimony. Pile v. Bright, 156 Mo. App. 301. (b) Nor should he have been permitted to testify as to money claimed to have been advanced to his wife, she being dead. R. S. 1909, sec. 6354; Miller v. Slupsky, 158 Mo. 643; Johnson v. Quarrels, 40 Mo. 423; Mckee v. Downing, 224 Mo. 138; Goodale v. Evans, 263 Mo. 228; Chapman v. Dougherty, 87 Mo. 617. (c) Defendant's cause of action, if any, for advancements, is barred by limitation. R. S. 1909, secs. 1897, 1881; Graham v. Wilson, 168 Mo. App. 185.

HIGBEE, C.—This suit was instituted January 15, 1917, to partition 445.76 acres in Platte County. This is the second appeal. The facts developed at the first trial are clearly stated in the opinion by GOODE, J., in 282 Mo. 610 (222 S. W. 1018). In the state of the record the court was unable to decide the case on its merits. It involved a collateral attack upon the judgment of the Circuit Court of Montgomery County, Kentucky, construing the will and partitioning the lands of William Ragan, deceased. Elihu Park, Laura Park, his wife, and Mary Park, their daughter, then a minor, were joined as co-defendants in that action. They were non-residents of Kentucky and were living in Platte County, Missouri, when that suit was commenced. The judgment recites

that they were duly summoned in the action. This reci-
tation is based on a warning order authorized by the
Kentucky statutes. [See page 620.] Judge GOODE,
near foot of page 627, said:

"This method of notifying non-residents of litiga-
tion to which they are parties, took the place in Kentucky,
at the time of the suit in Montgomery County, of notice
by an order of publication, and the steps prescribed must
have been followed substantially for the notice to be
effective. [Carr's Admr. v. Carr, 92 Ky. 552.] Sections
57, 58, 59 of Bullitt's Code of 1883, were proved; but
Section 60, which the Kentucky decisions hold fixes and
determines the moment when jurisdiction is completely
acquired by following the steps prescribed to notify a
non-resident, *was not proved.* Nor were any of the de-
cisions of the Kentucky Court of Appeals, which have ad-
judicated the effect of said statute, put in evidence, or
their doctrines otherwise proved; and no stipulation was
made that the relevant law of Kentucky might be no-
ticed without proof of it. The question whether there
was notice to the Missouri defendants of the suit, if it
should be decided without the aid of the omitted Ken-
tucky law, would be answered in the negative."

After the reversal, the plaintiffs filed a second
amended petition, and certain sections of the Kentucky
statutes and decisions of the Court of Appeals of that
State, relevant to the issues, were pleaded by the plain-
tiffs and the defendants. There was also additional evi-
dence offered at the trial. The court found the facts
as they were found at the first trial; that is, that the
plaintiffs, and the defendants, other than the appellants,
Elihu Park and Stuart Thompson, were the owners of
the 416.76 acres; that this land was bought with a trust
fund and conveyed to Laura Park upon the terms, con-
ditions and limitations prescribed in the will of her fa-
ther, William Ragan, deceased, and that upon her
death, June 6, 1916, without leaving issue surviving her
(her daughter, Mary Thompson, having died without
issue on June 4, 1900), the title passed to her sisters or

their descendants according to the terms of the will as construed by the Circuit Court of Montgomery County, Kentucky.

In referring to the order to Mitchell, the trustee, to re-invest the shares of Laura Park in real estate, the former opinion uses the words "without having issue." According to the corrected transcript offered at the second trial, the order reads, *"without leaving issue,"* so that the clause reads, "but in the event of the death of Laura Park, without leaving issue, then the title to her share," etc.   [See page 622.]

At the opening of the second trial it was stipulated that either party may offer in evidence any relevant statute or decisions of the Kentucky Court of Appeals.   It was also stipulated in this court that such statutes and decisions need not be printed, nor abstracted in the appellants' abstract of the record, but it shall be sufficient to refer to them in the usual manner and they may be considered by this court as if printed in full in the abstract.

In addition to the evidence referred to in the former opinion, it was shown at the second trial that on March 24, 1883, Elihu Park and Laura Park filed a petition in the Circuit Court of Platte County praying the appointment of Elihu Park as trustee for Laura Park, to receive the money and personal property due her from her father's estate in Montgomery County, Kentucky. It was averred that said fund was to be invested in real estate conveyed to said Laura Park as her separate estate for her life, with remainder in fee to her issue, if there be any, but if she dies without leaving issue, to vest in her surviving sisters in fee, etc., as directed by the will and as construed in the decree of the Kentucky court.   The order was accordingly made, and bond given by Elihu Park as trustee for Laura Park.   His final account as trustee shows four payments received from William Mitchell, trustee in the State of Kentucky, beginning April 21, 1883, and ending January 19, 1885, aggregating $7,695.94.   It shows $6,227.99 paid out for 204

acres, and various sums for improvements on the land and other expenses. This does not include money received for the sale of the 138 acres.

The transcript of the record of the proceedings in the Circuit Court of Montgomery County shows that on June 9, 1883, the administrators of William Ragan, deceased, filed an amended petition, reciting they had received rents from the real estate since the death of the testator, amounting to about $5,000, and prayed instructions about its distribution; that on June 11, 1883, Elihu Park and wife, by J. B. Peters, attorney, entered their appearance to said amended petition, and that the court ordered the rents be distributed equally as to the eight daughters and their trustees for re-investment, as directed by the will "and no parts thereof belong to the said eight devisees absolutely."

The transcript also shows that on December 16, 1884, Elihu Park and his wife filed a cross-petition, signed "Peters for Park and wife." It averred that Elihu Park had been appointed trustee for his wife by the Circuit Court of Platte County, and prayed that Mitchell, trustee, be removed and the money in the hands of the administrators due Mrs. Park be paid over to Elihu Park as trustee. This cross-petition was withdrawn on December 18, 1884. Park testified that neither he nor his wife authorized Peters to appear for them in the Kentucky case; that he first learned of the suit in the Circuit Court of Montgomery County, Kentucky, after his daughter died in June, 1900.

Plaintiffs offered in evidence Sections 57, 58, 59 and 60 of Article II of Bullitt's Civil & Criminal Code of Practice of Kentucky, revised in 1883, corresponding to Sections 88, 89, 90 and 91 in force prior to 1882, and also Section 38 of the Code.

Section 60 (91) reads: "A defendant against whom a warning order is made and for whom an attorney has been appointed shall be deemed to have been constructively summoned on the thirtieth day thereafter, and the action may proceed accordingly."

Section 38 reads: "1. No appointment of a guardian *ad litem* shall be made until the defendant is summoned, or until a person is summoned for him, as is authorized by Section 52; nor until an affidavit of the plaintiff, or of his attorney, be filed in court, or with the clerk, or presented to the judge during vacation, showing that the defendant has no guardian, curator, nor committee, residing in this State known to the affiant."

I. Numerous decisions construing these statutory provisions are referred to in the pleadings and briefs of counsel. In Northern Bank of Ky. v. Hunt's Heirs, 93 Ky. l. c. 75, the court said: "There is no command to any officer to execute this order, but it stands executed when an attorney is appointed to correspond, and a judgment *in rem* will be rendered—the facts authorizing it—if the defendant fails to answer within the time prescribed by the Code."

Jurisdiction:
Warning Order.

"The words, if the defendant be constructively summoned, mean only the making of the order of warning against him." This last quotation is from Irish Bldg. & Loan Assn. v. Clemons, 78 Ky. 79, l. c. 82.

The decree of the Kentucky court construing the will of William Ragan, was rendered May 30, 1892. The transcript of the record thereof was duly authenticated October 30, 1920, twenty-eight years after the rendition of the judgment. The warning order and the clerk's certificate that it is mutilated and torn, in the corrected transcript, are the same as they appear in Judge GOODE's opinion at page 620.

Appellant's learned counsel contend there is no evidence in the record that there was a warning order or that the warning attorney performed his duty to notify the non-residents.

In Meddis v. Dellinger, 112 Ky. 500, 66 S. W. 185, not even a scrap of the warning order could be found. The Court of Appeals said: "Is the judgment rendered in 1878, at the instance of Floyd Frye—case Number

32754—void by reason of the fact that the warning order written out by the clerk does not appear in the record or papers on file? In our opinion this does not render the judgment void. Aside from the question whether the non-residents therein were necessary parties to the suit, we are of the opinion, and so hold, that the mere failure to find the written warning order made by the clerk will not authorize the court, at this remote period of time, to declare the judgment void. The record leaves no doubt that a warning order was made. The clerk so certifies on the petition, and also makes such memorandum on his docket book. . . . After the lapse of more than twenty years, the court must conclude, in the absence of a contrary showing, that this certificate of the clerk is true, and that the warning order was made. The report or answer of the warning-order attorney is on file, and, as this is a jurisdictional fact, we are authorized to presume in favor of the jurisdiction, rather than against it. It may not have been possible or practical to write the warning order on the petition. If it had been written on a separate piece of paper, and attached to the petition, it would have been sufficient. It could not be that, if it was detached from the petition, and lost, the judgment would be destroyed. We must presume that it was written as the clerk certifies, and has been lost out of the papers, which presumption upholds the judgment, rather than ignores the certificate, and the docket entry, and the other facts apparent from the record, and from the mere failure, after twenty years, to find the warning order in the records, declare a solemn decree of a court of general jurisdiction void.''

In Ball v. Poor, 81 Ky. 27, the warning-order attorney simply wrote a letter to a non-resident defendant. The court said: ''The report of the attorney appointed to defend for appellant as a non-resident in the case of the city of Covington, shows that he merely wrote a letter to her, and delivered it to her agent in the city of Cincinnati, Ohio, instead of making 'diligent efforts to inform the defendant by mail concerning the pendency

and nature of the action,' as required by law. But as by Section 60 of the Civil Code 'a defendant against whom a warning order is made, and for whom an attorney has been appointed, shall be deemed to have been constructively summoned on the thirtieth day thereafter and the action may proceed accordingly,' the judgment in this case cannot be regarded as rendered prematurely, because the attorney failed to perform the duty required.''

From the record in the instant case there can be no doubt that a warning order was made and, as said in Northern Bank v. Hunt's Heirs, supra, the order ''stands executed when an attorney is appointed to correspond.''

In view of the order reversing and remanding the case, ''in order that the parties, if they desire, may make proof of any Kentucky statutes or decisions which bear upon the questions involved,'' and of the proof at the second trial of the statute and decisions of the Kentucky Court of Appeals, supra, we do not think it necessary to cite other decisions or further pursue this branch of the case. We must conclude that the record shows that the Circuit Court of Montgomery County acquired jurisdiction in the premises and that its judgment is good as against a collateral attack.

II. Furthermore, the proof is conclusive that Elihu Park and his wife accepted the 138 acres allotted to Mrs. Park and her share of the personal estate upon the terms, conditions and limitations of the decree, if they

Estoppel.
did not, in fact, by intervention, become parties to the proceedings, and are estopped to question or attack the decree for want of jurisdiction as to them. They not only accepted the trust fund; Mary Park Thompson, when of full age, on December 31, 1897, also accepted it by joining with her father, mother and husband in the conveyance to Anna R. Burchett of the 138 acres allotted to her mother, Laura Park, for the purpose of converting the land into money for re-investment; the trust funds realized from the 138 acres were accepted and invested in the land in controversy at the

instance and request of herself and mother, in accordance with the terms and conditions of the decree. On the plainest principles of justice they may not accept the benefits and repudiate the judgment through which they acquired the 138 acres of William Ragan's estate. [Lindsley v. Patterson, 177 S. W. (Mo.) 826, 832 (13); Lynch v. Jones, 247 S. W. (Mo.) 123, 127 (4).] In my humble opinion, Mary Thompson, as well as her father, mother and husband, recognized and ratified the judgment of the Montgomery County Circuit Court, and are therefore estopped to question the jurisdiction of that court in the premises. They cannot play fast and loose, blow hot and cold, or accept and retain title to the land and repudiate the judgment through which they acquired title.

III. Plaintiffs pleaded Section 9, Chapter 63, Article I, of the General Statutes of Kentucky, in force since the year 1851, which reads:

"Unless a different purpose be plainly expressed in the instrument every limitation in a deed or will contingent upon a person dying without heirs, or without children or issue, or other words of like import, shall be construed a limitation to take effect when such person shall die, unless the object on which the contingency is made to depend be then living, or if a child of his body, such child be born within ten months next thereafter."

This statute is substantially the same as our Section 2268, Revised Statutes 1919.

In Phoenix & Third Nat. Bank v. Cassell, 224 S. W. 1073, decided in 1920, the Kentucky Court of Appeals construed a will quite similar to the one in question. There the testator devised an estate for life to Telitha Randall, with remainder to her children. "In the event she dies without issue, the real property mentioned herein as devised to her for life, with remainder to her children, shall go to and be equally divided among my brothers and sisters who shall be living at the time, except Thomas G. Randall and A. P. Randall." Telitha was

unmarried at the time of the testator's death, but afterwards married Thomas L. Cassell.  The court said:

"On the other hand, it is argued for the appellant that the language of the will referred to can only mean without issue (i. e., a child or children) living at the time of Mrs. Cassell's death; in other words, that only in the event of her survival by a child or children' would the latter become vested with an indefeasible fee in the property.  We think this contention sound and find that it is supported by ample authority.  There can be no difference in meaning between the words 'in the event she dies without issue' used in the will of Charles S. Randall, and such words as 'if she dies without leaving a child or children.'  In either case, the title devised subject to such contingency would be a defeasible fee. The only question to be considered in construing such language as 'die without issue,' 'without leaving issue,' 'without issue surviving,' or 'living at the death,' etc., is as to what time the testator intended the 'death without issue' to take effect, for this is important in determining whether the first devise is defeated by such event and the limitation over made effective.  Manifestly the expression 'in the event she dies without issue,' contained in the will under consideration can only mean a definite, as opposed to an indefinite, failure of issue, and must therefore be held to mean the non-existence of issue at the death of Telitha Cassell.

"An excellent illustration of our meaning will be found in Moore v. Moore, 12 B. Mon. 651, in which the devise was a tract of land to the testator's daughter, Martha, with remainder, 'if she should depart this life without issue,' to the testator's brothers and sisters.  It was held by the use of the above language the testator meant issue living at the time of the daughter's death, and not an indefinite failure of issue."

And again: "The opinion in Kennedy v. Arthur, is largely made to rest upon certain provisions of the will in that case, which are wanting in the will in the instant case; and as Fisher v. Lott involved land the title to which

was in part passed on in Kennedy v. Arthur, the court in deciding it felt bound by the opinion in that case. We think it clear from a reading of the entire will in that case that the testator did not intend that the property 'devised to Mrs. Cassell should pass to strangers in blood; hence he provided in his will that, if she should die unsurvived by issue, the property should go to his brothers and sisters living at the happening of that event.''

We think it clear, therefore, that the words ''die without issue'' or ''die without leaving issue'' were properly ''construed a limitation to take effect when such person (that is the life tenant) shall die,'' as expressed in the Kentucky statute. From a reading of the entire will we also think it is clear that the testator did not intend that the property devised to his daughter, Laura Park, for life, should pass or descend to strangers in blood in the event she died without leaving issue surviving her at the time of her death.

IV. The appellant Elihu Park complains in his brief that the court erred in holding that he was not the owner of an undivided interest in the ninety-one acres. [See former opinion, page 624.] This refers to a deed dated March 1, 1886, by Elihu Park, conveying a separate estate for life to Laura Park, with remainder in fee to her issue should there be any.; but if she dies without leaving any issue, to vest in her surviving sisters, etc. The consideration recited is $5,000. The deed recites: ''The consideration paid for this deed is a part of a trust fund arising from the will of William Ragan, . . . who was the father of said Laura Park and by the terms of said will, said land is her separate estate for life, without remainder in fee to her issue, should there be any; but if she dies without leaving any issue, to vest in her surviving sisters in fee,'' etc.

*Vendor's Lien.*

Over the objection of respondents that Park was incompetent to testify to the transaction with his wife who was dead, he testified in substance that his wife gave

him her one-day note, dated March 1, 1886, for $5,000 for the purchase price of the land; that she paid, March 1, 1886, $718.94; March 22, 1886, $1902.60; April 5, 1886, $600 and that on January 1, 1894 she paid him $300 out of her individual fund, and that no further payments were made. It is contended that about three-eighths of the purchase price was paid from the trust fund, and that the remaining five-eighths is not impressed with the trust; that Laura Park must be held to have owned that interest in her individual right, and that appellant acquired five-sixteenths by inheritance, and is entitled to curtesy in the other five-sixteenths.

This claim rests entirely on the evidence of the appellant, Elihu Park. He is so thoroughly impeached that the chancellor probably gave little, if any, credence to his testimony. Respondents insist that he is an incompetent witness to transactions with his deceased wife who died more than twenty-two years after the date of the last payment. See Miller v. Slupsky, 158 Mo. 643. But, waiving that, it is clear that appellant's remedy, if he had any, was an action on the note to enforce his vendor's lien, which, it would seem, was barred by limitation. Furthermore, we are of the opinion that the appellant cannot assert this claim against the explicit recitations and covenants of his deed, after the death of the grantee and the lapse of so many years. [Orchard v. Store Co., 264 Mo. 554, 563; Herndon v. Yates, 194 S. W. (Mo.) 46, 48.] This contention is without merit.

Appellant Park also claimed in his answer that immediately after Laura Park purchased the land described in the petition he and she moved on it, and, believing that he and his wife had good title, he made substantial improvements amounting to more than $5,205, which enhanced the value of the land and for which he claims reimbursement. He erected a dwelling house, barn and other buildings on the land which he subsequently conveyed to his wife, but some of the improvements were on her other land, as he testified. He consulted eminent counsel who construed the Ragan will as vesting a life

estate in Laura Park with remainder in fee to Mary Park. Counsel cite no authorities in support of their contention. The principal improvements for which appellant claims reimbursement were on his own land, which he subsequently conveyed to his wife, as hereinbefore stated.

We are unable to see on what principle appellant is entitled to be reimbursed for improvements in an action against his grantee or her heirs, or for improvements made on his wife's land, in the absence of a special agreement to compensate him therefor. The case was well tried and the judgment was for the right parties. It is accordingly affirmed. *Railey, C.,* concurs.

PER CURIAM:—The foregoing opinion of HIGBEE, C., is hereby adopted as the opinion of the court. All concur, except *Walker, J.,* absent.