**TEXAS CO. v. McMILLAN et al.**

District Court, N. D. Texas, Dallas Division.
Dec. 30, 1935.

to it for $43,000, some of whom had in turn conveyed to the respondents McMillan royalty on any oil production from lands that had theretofore been leased to the complainant; such transfers to the McMillans reciting the lease to the complainant and declaring subjection thereto. Other respondents claim to be the heirs of John T. Smith. The Smith survey was specified in the 9723.8 acres, originally secured by complainant, to have 358 acres more or less, while the original patent from the state showed it to have had 1,280 acres, more or less.

The Smith survey is shown to lie south of block L, which block contains sections 34, 35, 36, and 37, each of which is older and senior to the Smith survey.

To the west of sections 35 and 36 lay the Anglin and Johnson surveys. The respondents claim that some of the Smith 1,280 acres is to be found on these last two mentioned tracts, or, to the west of the west line of 35 and 36. The complainant and the interveners assert that the original Smith survey called for 1,280 acres more or less, and if it had any more than the 358 acres now shown on it, such overplus was erroneously surveyed into and upon the surveys that laid in block L as mentioned above; that such error was due to a failure of the junior surveyor to take into account the difference between magnetic north and true north as recognized and provided in the laws of Texas at what is known as the Jacksboro station.

H. S. Garrett and H. R. Wilson, both of Fort Worth, Tex., for complainant.

Ramey, Calhoun & Marsh and S. L. Brown, all of Tyler, Tex., and Bullington, Humphrey & King, of Wichita Falls, Tex., for respondents.

Morgan, Culton, Morgan & Britain, of Amarillo, Tex., and O. T. Warlick, of Vernon, Tex., for interveners.

ATWELL, District Judge.

The complainant brought its bill against L. O. McMillan, A. F. McMillan, and 40 other respondents to restrain claims of ownership, trespassing, and otherwise interfering with its title, possession, and control of 9723.8 acres of land in Foard and Cottle counties, Tex. Sharon v. Tucker, 144 U.S. 533, 12 S.Ct. 720, 36 L.Ed. 532; Colquitt v. Roxana Petroleum Corporation (C.C.A.) 49 F.(2d) 1025; Tyler v. Stanolind Oil & Gas Co. (C.C.A.) 77 F. (2d) 802.

Jessie Herring Johnson, her husband, Les K. Johnson, and Leslie McAdams intervened, supporting the theory of the complainant as to the survey lines and limitation.

The complainant asserted rights under a lease executed by many of the respondents

■ The McMillans, after acquiring royalty rights from the vendors of complainant, received payments from the complainant upon such portion of the lands as were developed. Such acquisition and acceptance of benefits by them from the complainant places them in the attitude of having recognized, confirmed, and ratified the title of the complainant, and they are estopped to deny its estate. Texas & Pacific Coal & Oil Co. v. Kirtley (Tex.Civ.App.) 288 S.W. 619; 2 Story Eq.Jur. (13th Ed.) § 180; Fox v. Windes, 127 Mo. 502, 30 S. W. 323, 48 Am.St.Rep. 648; Bearden v. Texas Co. et al. (Tex.Civ.App.) 41 S.W. (2d) 447; Jones v. Patterson, 307 Mo. 462, 271 S.W. 370; Schloss Bros. & Co. v. Stern Co. (C.C.A.) 53 F.(2d) 574; Wilson v. Union Electric Light & Power Co. (C. C.A.) 59 F.(2d) 580.

There is another principle of estoppel which operates against the respondents. In the lease to the complainant there was a

warranty. These particular respondents bought from such warrantors. It is a rule of property that neither a warrantor nor a person in privity with him may question the validity of that title, nor, from such a warrantor, assert a hostile outstanding title against the same. Kimbro v. Hamilton, 28 Tex. 560; Carver v. Jackson, 4 Pet. 1, 101, 7 L.Ed. 761; Hardy v. De Leon, 5 Tex. 211; Stone v. Sledge, 87 Tex. 49, 26 S.W. 1068, 47 Am.St.Rep. 65; Robinson v. Douthit, 64 Tex. 101; Willis v. Smith, 72 Tex. 565, 10 S.W. 683; Breen v. Morehead (Tex.Civ.App.) 126 S.W. 650; Texas Pacific Coal & Oil Co. v. Fox (Tex.Civ. App.) 228 S.W. 1021.

This rule is so incisive and decisive that a title acquired by a vendor after he has conveyed a defective title passes eo instante to his vendee. Baldwin v. Root, 90 Tex. 546, 40 S.W. 3; French v. Spencer, 21 How. 228, 16 L.Ed 97.

Recent authorities on this question of estoppel and ratification are Grissom v. Anderson (Tex.Sup.) 79 S.W.(2d) 619; Humble Oil & Refining Co. v. Clark (Tex. Com.App.) 87 S.W.(2d) 471.

In Gibson v. Lyon, 115 U.S. 439, 6 S.Ct. 129, 133, 29 L.Ed. 440, it was said that: "He [a person] certainly cannot be permitted to claim both under and against the same deed; to insist upon its efficacy to confer a benefit and repudiate a burden with which it is qualified is to affirm a part and reject a part."

Upon the other feature of the case which relates to 5, 10, and 25 years' limitation, as pleaded by the complainant and interveners, vendors of complainant, in support of title against the heirs of James T. Smith, the proof shows a continuity of notorious, open, adverse possession, together with the payment of taxes. Neither of the alleged heirs has ever been upon the land, if it be conceded that they are in truth the heirs of the original Smith, the grantee. Carter v. Webb (Tex.Civ.App.) 239 S.W. 630.

When a junior surveyor seeks the pointings of an original survey he must travel in the footsteps of that surveyor. The position lines, corners, fences, roads, and well-marked outlines, which have been recognized by the people during the years, must control. Where indicia of that sort, together with a compass variation in harmony with the number of degrees fixed by state statutes, harmonize with present and past holdings and show an overlapping on senior surveys, the court must be guided thereby and so fix the boundaries.

Surveyor Williams drives the mind to the inevitable, it seems to me, conclusion that while the J. T. Smith survey may have had 1,280 acres more or less, that as a matter of fact it must have had considerably less, and if there is any more in it than the 358 acres, then it must have overlapped in some unimportant, so far as this case is concerned, inconsequential manner, with surveys 35 and 36.

It is quite possible that it never did have much more than 358 acres.

Now, that is saying, I recognize, something that may be subject to, not only criticism, but to successful contradiction, when we remember that, taking into consideration as we must, the possession lines and the well-marked corners of the original work of the entire block or tract, which included a number of individual surveys, the west line of the Smith runs slightly to the east of the west line of 35 and 36, veering to the right as it reaches 35, even more, of course, than it does when it first reaches 36.

The accounting for 204.98 varas discrepancy between the claim of 1,683 varas as originally made and the 1,900 varas, as made by a subsequent surveyor in 1888, must be considered. I do not believe that it would be legal, within the law of decided markings, to apportion that which the junior surveyor was trying to carry into his estimate, since it had no place in the original markings. But if we take into consideration the difference between 1,683 and 1,900, and then take into consideration the difference between the two poles, which we must do under the law, McIver v. Walker, 4 Wheat. 444, 4 L.Ed. 611; Bryan v. Beckley, Litt.Sel.Cas.(Ky.) 91, 12 Am.Dec. 276; Americana, Vol. 26, p. 91; Act Legislature Texas 1873, p. 173, Sayles' Early Laws, vol. 3, p. 206 (Vernon's Ann.Civ.St.Tex. art. 5295); Smith v. Jarvis, 47 Tex.Civ.App. 185, 105 S.W. 1168, we come out on the lines of fences and markings and possessions and roads that the people who have had that rough land under control during all of these years have considered and recognized. The various definitely fixed corners from which the surveyor must operate and necessarily, of course, from which the court must form conclusions, control. Clement v. Packer, 125 U.S. 309, 8 S.Ct. 907, 31 L.Ed. 721; Lyon v. Waggoner, 37

Tex.Civ.App. 205, 83 S.W. 46; Bridenbaugh v. Bryant, 79 Neb. 329, 112 N.W. 571; Standefer v. Vaughan (Tex.Civ.App.) 219 S.W. 484.

The court admitted the testimony as to the public service of John T. Smith for and during the early days of our great state. That testimony was perhaps slight, but it is in here, and I think the survey was probably marked off in honor of him, and I think that some of this tribe which descended from Isabelle and Mary Smith as the daughters of Betsy Smith are, in all probability, his descendants and entitled to whatever he may have been entitled to. But I say, some of the testimony is rather slight, and I would not put myself in the attitude of saying more than that with reference to it. But even if they had anything at one time, in this year now, 1935, they have not got it. They never paid any attention to it, have never been on it, other people have been using it, fencing it and pasturing it, and exploiting it, paying the taxes on it, and every trend of the law would demand that the titles be quieted. If the John T. Smith who was the forebear of Betsy Smith was another and different Smith than the hero for whom the survey was named, then they have nothing anyhow.

There are some original pioneer steps here, it seems to me, as clearly indicated by this testimony, and working from them, as I have said, and working from the state statute with reference to the variation of the surveyors' instruments, and bearing in mind the whole situation, I find the facts and the law to be with the complainant.

Decree must be entered for the complainant as its position on limitation, boundaries, and estoppel are supported by the law and the facts.