THE STATE EX REL. JOHN A. LOVE, OLIVER ANDERSON ET AL. v. CHARLES U. BECKER, Secretary of State, and F. T. STOCKARD, Commissioner of Securities.—34 S. W. (2d) 27.

Court en Banc, December 31, 1930.

1194

*Fordyce, Holliday & White* and *Thompson, Mitchell, Thompson & Young* for relators.

*Stratton Shartel,* Attorney-General, and *Walter E. Sloat,* Assistant Attorney-General, for respondents; *L. Cunningham* of counsel.

GANTT,—Original proceeding in prohibition. Cause submitted on the pleadings. The Secretary of State, prior to May 10, 1930, directed the Commissioner of Securities to investigate all dealers in securities in St. Louis, to determine if they had been or were violating the Securities Act. They contend that relators refused to cooperate with the Commissioner and his agents in an examination of relators' books and papers.

Relators offered to furnish any material information the Commissioner desired, and offered to permit an examination of books and records material to any question arising under the Securities Act. However, there being no provision requiring them to pay the expense of an investigation, they refused to do so. To this extent they refused to cooperate.

Respondents proceeded by authority of Section 15 of the act, which in part follows:

"Commissioner may make investigations and hold public hearings. —In carrying out the provisions of this act the commissioner may make such investigations and hold such public hearings at such time and place and upon such reasonable notice as the commissioner may fix, and may appoint agents to make investigations, who shall have power to administer oaths, examine witness and take testimony. It shall be the duty of all officers of the State of Missouri charged with the enforcement of criminal law to render and furnish to the commissioner, when requested, all information and assistance in their possession or within their power. The commissioner may by

summons require the attendance and testimony of witnesses and the production of books or papers before him relating to any matter of which he has jurisdiction under this act. Such summons may be issued by the commissioner. They shall be served in the same manner as summonses for witnesses in causes issued on behalf of the State of Missouri, and all provisions of law relative to summonses issued in such cases shall apply to summonses issued under this act, so far as applicable. The commissioner shall have power to administer oaths. In case of disobedience to a subpoena, the commissioner, or any party to a proceeding before the commissioner, may invoke the aid of the circuit court of any county of the state or the city of St. Louis, and such court may thereupon issue an order requiring the attendance, and testimony of witnesses and the production of books, papers, and documents under the provisions of this section. Any failure to obey such order of the court may be punished by such court as a contempt thereof.''

Thus it appears that respondents could, by invoking the aid of the circuit court, compel the production of books and records tending to show the business condition and conduct of relators as investment bankers and brokers. Instead of so proceeding, respondents, no doubt for reasons satisfactory, treated relators' alleged refusal to cooperate as a contempt of the State Department, and proceeded to punish relators by attempting a proceeding against them under Section 23 of the act. In so doing, on May 10, 1930, they caused to be served on each of relators a notice, a copy of which follows:

''Whereas, it has been charged that you and your agents have violated and are violating the provisions of an act of the 55th General Assembly of Missouri, entitled 'An act to repeal an act of the 52nd General Assembly, 1923, entitled ''Finance Department of: Relating to sale or disposition of securities in state and providing penalty for violation of act,'' approved April 2, 1923, found at pages 200 and 218, inclusive, Laws of Missouri, 1923, as amended by an act of the 53rd General Assembly, 1925, entitled: ''Secretary of State: Relating to sale or disposition of securities in state and providing penalty for violation of act,'' approved April 3, 1925, and; found at pages 339 to 343, inclusive, Laws of Missouri 1925, and to enact in lieu thereof a new act, pertaining to the same subject,' approved by the Governor . June 8, 1929, and commonly known as the Missouri Securities Act, pages 387 to 412, inclusive, Laws of Missouri, 1929, by the sale and disposition of securities in the State of Missouri contrary to and in violation of said act, and

''Whereas, you have refused to cooperate with the Commissioner of Securities of the State of Missouri and his agents and representatives in the examination of your books, papers and records in order

to determine whether or not you have or are now violating the Missouri Securities Act.

"You are therefore notified and directed to be and appear before the undersigned Commissioner of Securities of the State of Missouri at room 204 in the State Capitol Building in the city of Jefferson, County of Cole and State of Missouri, at ten o'clock A. M. on Thursday, the 15th day of May, 1930, then and there to produce for examination and use in evidence all of your books, papers and records in regard to and concerning your transactions and sales of securities in the State of Missouri during the years 1929 and 1930 in order that it may be ascertained and determined by said Commissioner whether or not you have violated or are now violating said act, and to show cause why your registration as a dealer in securities in the State of Missouri should not be revoked under the provisions of Section 23 of said act for the causes named in paragraphs numbered 1, 3, and 5 of said section, as provided by law."

Thereafter, and on May 12, 1930, relators made written demand on the Commissioner of Securities to be informed as to the nature of the charges, that they might prepare their defense. He answered by referring them to the notice for such information. Respondents then indicated that a hearing under said notice would be held and they state in their return that they would have proceeded with a hearing to final determination but for our rule in prohibition.

Relators contend the proceeding under Section 23 is judicial in its nature. Respondents so admit, and the contention is sustained by authorities as follows: State to use v. Fry, 4 Mo. 1. c. 121; State ex rel. Guaranty Co. etc. v. Harty, 276 Mo. 597; Merlette v. State, 100 Ala. 1. c. 44; Grider v. Tally, 77 Ala. 1. c. 424; State ex rel. Brewen-Clark Syrup Co. v. Missouri Workmen's Compensation Commission et al., 320 Mo. 893, 8 S. W. (2d) 897; State ex rel. Gallagher v. Kansas City et al., 319 Mo. 705, 7 S. W. (2d) 357.

The proceeding being judicial in its nature, relators contend the notice is not "reasonable notice" within the meaning of Section 23 of the Act. It is therein provided as follows:

"Registration of dealers and salesmen may be refused—revoked—what conditions.—Registration under Section 22 may be refused or any registration granted may be revoked by the commissioner if after a reasonable notice and a hearing the commissioner determines that such applicant or registrant so registered:

"(1) Has violated any provision of this act or any regulation made hereunder; or

"(2) Has made a material false statement in the application for registration; or

"(3) Has been guilty of a fraudulent act in connection with any sale of securities, or has been or is engaged or is about to engage in making fictitious or pretended sales or purchases of any of such

securities or has been or is engaged or is about to engage in any practice or sale of securities which is fraudulent or in violation of the law; or

"(4) Has demonstrated his unworthiness to transact the business of dealer or salesman; or,

"(5) Is insolvent."

The notice is a double-barreled effort. It orders the production of books and papers and orders relators to show cause why their licenses should not be revoked under Section 23 for causes named in paragraphs 1, 3 and 5 of said section. It contains no charges, and the Commissioner did not furnish such information. How could they show cause without official information as to the charges? A hearing presupposes the existence of charges. There could be no hearing without charges. Therefore, it seems clear that the Legislature intended "reasonable notice" to include information as to the charges. If the words "reasonable notice" as used do not include such information, then the section is in violation of the due-process clause of the Constitution. [In re Rosser, 101 Fed. 562, l. c. 567; Dyment v. Board of Medical Examiners, 207 Pac. 409, l. c. 411, 412; Abrams v. Jones, 207 Pac. 724, l. c. 726; State v. Schultz, 28 Pac. 634; Ex parte Robinson, 86 U. S. 505; 6 R. C. L. 446; 12 C. J. 1232.] It must be presumed that the Legislature, by providing in Section 23 for a hearing on "reasonable notice," did not intend to violate the Constitution.

We understand respondents to concede that "reasonable notice" includes information as to the nature of the charges, but they contend that reference in the notice to certain paragraphs of Section 23 was "reasonable notice" within the meaning of the section. We do not think so. One proceeded against under the section must be advised of the charges by "reasonable notice." It could not have been the intention of the Legislature that persons who might be proceeded against should carry with them pocket editions of the act that they might be advised of the charges by referring to the statute. The contemplated hearing without "reasonable notice" is in excess of the Commissioner's authority, and our rule should be made absolute. It is so ordered. All concur.