In the Matter of Charlotte BARGER and Shayne Barger, Minors.

Charles Franklin BARGER and Olavetta Barger, Petitioners,

v.

Eleanor MINKS, a.k.a., Eleanor Koch, a.k.a., Eleanor Benway, Respondent.

No. 31082.

St. Louis Court of Appeals.

Missouri.

Feb. 21, 1963.

**90**

Ralph R. Giessow, Marcella E. Widdoes, Clayton, for petitioners.

Corrine L. Richardson, St. Louis, for respondent.

BRADY, Commissioner.

The petitioners in this habeas corpus proceeding are the maternal grandfather and step-grandmother and also the adoptive parents of Charlotte Barger, a female child now 11 years of age, and of Shayne Barger, a female child now 13 years of age. The respondent, Eleanor Minks, also known as Eleanor Koch and Eleanor Benway, is the natural mother of these children. The petitioners adopted these children in Oakland County, State of Michigan, by decree dated November 19, 1959. The respondent and the children appeared in obedience to our writ and upon ascertaining that the respondent was without counsel and unable to retain counsel, this court appointed her attorney of record to represent her in these proceedings and granted additional time for counsel to consult with her and to file her return. The effect of that return was to deny the legality of the Michigan adoption decree for reasons that will be stated in detail later herein.

These two children were among the six born of the marriage of the respondent and Mr. Minks, all of which were placed in the custody of respondent by the St. Francois County Circuit Court in the divorce decree granted respondent in July of 1954. In 1955, respondent made arrangements with her father and his wife, petitioners herein, to take care of Shayne and the next year Charlotte also went to the Bargers in Michigan with respondent's consent. In November, 1957, the petitioners sought the aid of the Probate Court of Oakland County, State of Michigan, hereinafter referred to as the Michigan court, which court has jurisdiction of cases involving neglect and abandonment of children and of adoption proceedings in that county of that state. See Sec. 27.3178(541), Michigan Statutes Annotated, Comp.Laws 1948, § 710.1. On November 21, 1957, a petition was filed in the Michigan court alleging:

"Children are without adequate food, shelter, clothing, supervision, education, medical and other physical care necessary for their health, morals and well being, and the parents, legally responsible, have failed and neglected to provide therefore, for the reason

that, towit:—The parents are divorced, and the mother, who has custody, did place Shayne with the maternal grandfather, Frank Barger in March, 1955; she did also place Charlotte with the maternal grandfather in May, 1956,; the father is in the Missouri State Penitentiary, and the mother has failed to contribute towards the support of the children; she has also failed to show any interest in their welfare and well being, contrary to the form of the statute in such case made and provided"

The petition was sworn to by petitioner Charles Barger. On this petition, respondent's name was given as "Eleanor Koch", respondent having then remarried, and her address as "3414 S. Jefferson, St. Louis, Mo." and the father's address was given as "Missouri State Penitentiary". The respondent personally appeared at the hearing on this petition, as did the children's father, Clyde Minks. The hearing was held on February 11, 1958, and the transcript of that proceeding is a part of the record in this case. In view of our decision herein, certain excerpts from that transcript are particularly important and are set out herein.

At one point in the proceeding the court, speaking to Mrs. Barger, stated:

"Court:

"* * * but *this mother has the primary right to her children.* (emphasis supplied)

"A. (Mrs. Barger) *I believe that too.* (emphasis supplied)

"Court:

"I have something to tell you please. *Secondly I think the children would be better off with you people for this school semester.* But there is a third thing about it. Unless you can get along with the mother and help her to feel she has security with the children I will have to take them away from you and possibly not give them to her either. I am telling you this * * * (emphasis supplied)

"Stepgrandmother:

"We love them and she loves them, they are her children. If she could take care of them better *then I should think she should have them."* (emphasis supplied)

* * * * * *

"Court:

"I agree with you there are other things that could be done that would save that expense (of the respondent coming to Michigan to visit the children). *However, these youngsters could finish school here this Spring and if they were prepared for it they could come and visit you."* (emphasis supplied)

* * * * * *

"Court:

"* * * *I think what you have to decide here what you are going to do, not today, but decide it later in May or June.* I think we should get everything off our chest here today, because it isn't sensible to keep you running back and forth. *If we decide the children should stay this year and next with the grandparents * * *"* (emphasis supplied.)

At another point, the following appears:

"Grandfather:

"We have told them who their parents are. * * * I went to St. Louis once and to my son's house and they didn't know where they lived. I drove until four in the morning with the son and my wife looking for them and on that occasion I never did find them, but I couldn't find them to give then any aid whatsoever.

"Mother:

"*My mother knows where I am at all times.* (emphasis supplied)

"Grandfather:

"I didn't go to her mother. Your mother and I were divorced when you were a little girl."

The remainder of the transcript is not pertinent to our inquiry except that at the conclusion of the hearing, the court stated:

"Court:

"Very well. We are making a temporary order that the children stay where they are."

The Michigan court's order, in its pertinent parts, appears as follows with the asterisk indicating a blank to be filled in on the printed form with the appropriate word:

"IT IS ORDERED, That said children be and is hereby adjudicated to be a *temporary ward of this Court, and,

"IT IS FURTHER ORDERED, That said children shall be placed in the care and custody of their grandparents, Mr. and Mrs. Frank Barger, 303 Godfrey, South Lyons, Michigan, and under the supervision of Mrs. L. Floyd; and

"IT IS FURTHER ORDERED, That this cause shall be and the same continued until further order of the Court.

"Arthur E. Moore
"Judge of Probate

"Filed 11th day of February A.D. 1958
"Elsie J. Vascassenno Recorded in Liber 21c
 "Page 8399ms
"Probate Register, Juvenile Division
" * 'Temporary' or 'permanent' "

The evidence is that, under the Michigan procedure, the staff of the probate court actively participates in the initiation and presentment of proceedings that court deems best for the future welfare of the children under its jurisdiction including proceedings for permanent custody and adoption. Sometime after this hearing, a court worker asked the petitioners if they would be interested in adopting these children and on September 4, 1959, the Michigan court, as stated thereon, "On the Court's Own Motion" instituted a proceeding alleging " * * * a rehearing should be had to evaluate further plans * * *" and calling for a hearing on the 6th day of October, 1959. Copies of the summons were served by certified mail, addressed to the respondent in the name of Eleanor Minks Koch at 3414 South Jefferson, St. Louis, Missouri. The mail was returned marked "Moved, left no address". It does not appear from the evidence, but it is obvious that at some date after this another petition was filed. This must be the case because the order of publication recites that "Petition having been filed in this Court alleging that the present whereabouts of the parents of said minor children are unknown and said children are dependent upon the public for support and that said children should be placed under the jurisdiction of this Court" and this allegation differs from that contained in the September 4th petition. The Michigan court ordered service by publication. The proof of publication shows the following notice was published on October 3rd:

"STATE OF MICHIGAN—In the Probate Court for the County of Oakland, Juvenile Division.

"In the matter of the petition concerning Shayne and Charlotte Minks, minors. Cause No. 15590.

"To: Clyde Minks and Eleanor Minks Koch, parents of said children.

"Petition having been filed in this Court alleging that the present whereabouts of the parents of said minor children are unknown, and said children are dependent upon the public for support, and that said children should be placed under the jurisdiction of the Court.

"In the name of the people of the State of Michigan, you are hereby notified that the hearing on said peti-

tion will be held at the Oakland County Service Center, Court House Annex, 1260B West Blvd., in the City of Pontiac in said County, on the 13th day of October, A.D. 1959, at one o'clock in the afternoon, and you are hereby commanded to appear personally at said hearing.

"It being impractical to make personal service hereof, this summons and notice shall be served by publication of a copy one week previous to said hearing in the Pontiac Press, a newspaper printed and circulated in said County.

"Witness, the Honorable Arthur E. Moore, Judge of said Court, in the City of Pontiac in said County, this 1st day of October, A.D. 1959.

"(Seal) ARTHUR E. MOORE
 "Judge of Probate

 "ELSIE J. VASCASSENNO,
 "Probate Register,
 "Juvenile Division
 "Oct. 3, '59"

The hearing on October 13, 1959, was before a referee whose responsibility was to make recommendations to the Michigan court based upon the testimony taken before him. That transcript is also on file before us and consists of 1¾ pages of testimony. The referee recommended " * * that these girls be made permanent wards of the court for the purpose of consenting to such adoption as may seem advisable." The court entered such an order reciting therein " * * * and due notice thereof having been given as required by law * *" and sent certified copies to the respondent and Mr. Minks at the address on South Jefferson in St. Louis City but these were again returned marked "Moved, left no address". On the same day as the hearing before the referee, a petition for adoption for each child was filed by court personnel on behalf of the petitioners. On October 26, 1959, the court entered its consent to the adoption of each child.

On November 19, 1959, the Michigan court entered its order terminating parental rights which recites the petition for adoption as having been filed and the consent filed by the court and then reads as follows insofar as pertinent:

"NOW, THEREFORE, this court does hereby determine and find; that the consent to such adoption and legal authority for the execution of such consent was genuine, and in accordance with law; * * *.

"NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED and DECREED:

"1. That the rights of said children's natural parents, or the persons in loco parentis, other than the petitioners in this cause, are hereby terminated and said children are hereby decreed to be wards of this court for the purpose of adoption."

On the same day, the Michigan court also entered a separate order on each child which recited that a petition for adoption had been filed, consent given, an investigation and report made, an order terminating parental rights entered and that it be the best interest of the children and " * * * all interested parties, that immediate authorization of said adoption be made;" decreed the adoption of each child by the petitioners.

The transcript of the proceedings before the judge of the juvenile division of the Circuit Court of the City of St. Louis contains the testimony of the parties and other witnesses going to the respondent's contention that the petitioners were guilty of fraud in the procurement of this adoption decree. No useful purpose will be served by setting out in detail the testimony of the parties or their witnesses given in the proceeding before the special commissioner of this court, but this does not mean that it has not been carefully considered. However, in view of the disposition made herein of this matter, it is

only necessary to set forth certain parts of that testimony. For the purposes of the respondent's contention as to fraud, the following excerpts from the testimony will suffice. The petitioner, Mr. Barger, was asked the following questions and gave the following answers:

"Q. Now, were these proceedings instigated then, this petition was written in November—signed November 21, 1957; did you just walk up to the courthouse and ask them to write the petition to take temporary custody?

"A. No. May I explain how that came about?

"Q. Yes. A. We had the children, and we knew that Eleanor wasn't able to take care of them. She was running around from here to there and there. *She got an idea she wanted to come up and get the children and called us on the telephone and said she would be up in a couple weeks to get the children.* And for the children's sake I went to an attorney and asked what I should do and I told him the situation. He says, 'You go to the probate court and see Mrs. So and So, and she will tell you what to do.' And that is when this court worker instigated the investigation in St. Louis and filed." (emphasis supplied.)

At another point, when asked "What was your reason for bringing a custody proceeding?", Mr. Barger testified that:

"A Well, my daughter had called my wife, not me; she had called my wife. *She said she was going to come and pick the children up.* And the last I heard at that time she was in California or Florida; it could have been Florida." (emphasis supplied.)

During Mrs. Barger's testimony, she stated:

"Q Can you remember whether she contacted or wrote to the children? A Well, that is what I was trying to tell you. There was mail that came to

the post office under the name of Minks, and we refused it and didn't take it; it went back. I don't know who it went back to, who sent it.

"Q When was that? A That was several times. I can't remember the dates. It came 'Miss Shayne Minks' and 'Miss Charlotte Minks', and we were asked at the post office about it. And you know South Lyons is a small town forty miles out of Detroit. And the children were going to school and Church—"

\* \* \* \* \* \*

"Q And there was some mail or some presents that came to them addressed as Minks? A I don't know about presents or mail, but there was boxes that came, but the postmistress said, 'Did they want to take any mail or parcels addressed under the name of Minks?' And I said, and my husband said too, he told me that, 'If any mail comes under that name, just send it back.' "

The petitioners moved from Michigan to St. Louis, Missouri in 1961 because of Mr. Barger's employment and while here, the respondent took the children from the Barger home in St. Louis to her home in Jefferson County, Missouri, and this proceeding followed.

■■ Petitioners cannot be sustained in the contention that this court is without jurisdiction in this matter. Attacks upon judgments of sister states are well recognized if they are based on the grounds: (1) lack of jurisdiction on the subject matter; (2) failure to give due notice to defend; and (3) fraud in the procurement of the judgment. In re Ogle E. Veach, 365 Mo. 776, 287 S.W.2d 753; Gibson v. Epps, Mo.App., 352 S.W.2d 45; Wood v. Wood, 241 Mo.App. 367, 231 S.W.2d 882. Moreover the attack in this state can be maintained even if the foreign judgment recites therein the finding of all the jurisdictional facts required by the law of

the other state. Kilbourn v. Kilbourn et al., 354 Mo. 17, 190 S.W.2d 206.

■ Cognizant that the allegations of fraud upon the part of petitioners in the procurement of the adoption decree, as set forth in respondent's return and as set forth later herein, would require that testimony be taken, this court certified this case to the juvenile division of the Circuit Court of St. Louis City, Missouri, Honorable David McMullan, Judge, for hearing on all the issues raised by the pleadings and for a report to this court containing the recommendations of that court and the findings of fact and conclusions of law supporting such recommendations. That report containing his recommendations, findings of fact and conclusions of law has been filed with us. The petitioners then filed a "Motion for Adjudication" together with the "Separate Objection of Petitioners to Proceedings Previously Held" and their "Exceptions to the Report of Referee." The first pleading is really a motion for judgment on the pleadings and, since it goes to the merits of this proceeding, will be dealt with later herein. The second motion named above sets forth the petitioners' objections, carefully preserved throughout this proceeding, to the order of this court certifying this case to the juvenile division of the Circuit Court for hearing and report as above stated. These objections have no merit. This court's procedure in referring this case to Judge McMullan is clearly with the provisions of Sec. 211.040 RSMo 1959, V.A.M.S. (Laws of Missouri, 1957, p. 646) [1]. The last sentence of that section specifically authorizes the action taken by this court in that it provides "Such questions, however, may be certified by another court to the juvenile court for hearing, determination or recommendation." Attention should also be called to the fact that the report of the Honorable Judge of the juvenile division of the Circuit Court is a recommendation as called for in our order of certification and as authorized by Sec.

211.040, supra, and we are not bound by his findings or conclusions of law, the entire matter being for our ultimate decision.

This cause was submitted upon the "Exceptions to the Report of Referee." Again in these exceptions the referral to the juvenile division of the Circuit Court with the resultant hearing and receipt of evidence by that court and the petitioners' contentions that this court lacks jurisdiction were made but what has been held above disposes of those contentions. The exceptions to the report also urge as erroneous the finding that failure to enter a new petition before hearing and issuance of the order of permanent custody constituted non-compliance with the Michigan statutes and thus the Michigan court had no jurisdiction to enter the adoption decree but under the decision reached herein, we need not rule that point. The exceptions upon which the case turns is to the finding that there was a failure of due process of law.

The petitioners rely solely upon the validity of the Michigan adoption decree. The respondent attacks that decree in her return upon multiple grounds that may fairly be grouped and summarized as follows: failure of due process; fraud in the procurement of the decree; failure to file a proper petition for award of permanent custody; and failure to serve the Circuit Court of St. Francois County.

■ The respondent's contentions with regard to a lack of due process are based upon Sec. 27.3178 (598.20), Michigan Statutes Annotated, Comp.Laws 1948, § 712A.20, which reads as follows:

"Order of disposition to state nature of custody; change of custody from temporary to permanent, hearing; permanent custody, termination of parental rights, reinstatement.] Sec. 20. The court in all cases involving custody shall state in the order for disposition or any supplemental order of disposition whether the child is placed in the

1. Now section 211.051.

temporary or permanent custody of the court. If the child is placed in the temporary custody of the court, no supplemental order of disposition providing permanent custody, or containing any other order of disposition shall be made except at a hearing pursuant to issuance of summons or notice as provided in sections 12 and 13 of this chapter. If the child is placed in the permanent custody of the court, all parental rights are terminated, though such rights may be reinstated by a supplemental order of disposition."

 It cannot be denied that the rights of the natural parents of children are subject to regulation by the state and that if these rights come into conflict with the paramount interests of the child, it is within power of the state, by legislation, to separate children from their parents when the interests of the children and the welfare of the state require it. However, the existence of this right in the state does not mean that the law has abandoned its traditional regard for the maintenance, whenever feasible, of the natural parent-child relationship. Neither does it mean that a court may decree the termination of parental rights without notice to that parent for to do so would not only be contrary to all principles and traditions of justice as we know it but would also be in violation of the due process clause of Art. 14, Sec. 1 of the Constitution of the United States; Art. II, Sec. 16, Constitution of Michigan 1908; and Art. I, Sec. 10, Constitution of Missouri, V.A.M.S.; Child Saving Institute v. Knobel, 327 Mo. 609, 37 S.W.2d 920, 76 A.L.R. 1068; and see the opinion of the Attorney General of Michigan, May 23, 1945. The order making these children permanent wards of the Michigan court recites " * * * and due notice thereof having been given as required by law * * *" However, one of the things that the existence of this right in the state can mean is that, proper circumstances being present and following proper procedure, the consent of the natural parent, such as

respondent in the instant case, may be dispensed with and the state, acting through a person or an agency designated by statute, may enter its consent to the adoption. Thus it is that Sec. 27.3178 (598.20), as set out supra herein, provides for the termination of all parental rights by an order placing the child in the permanent custody of the court, and thus it is that Sec. 27.3178 (543), subd. b, Michigan Statutes Annotated, Comp.Laws 1948, § 710.3, subd. b, provides that the juvenile division of the probate court " * * * having permanent custody of the child shall enter an order consenting to said adoption * * *."

Sec. 27.3178 (598.20), supra, specifically requires " * * * a hearing pursuant to issuance of summons or notice as provided in sections 12 and 13 of this chapter." The "section 13" referred to therein is Sec. 27.3178 (598.13), Michigan Statutes Annotated, Comp.Laws 1948, § 712A.13, which in its pertinent provisions requires the judge to find " * * * that it is impractical to serve personally * * *" the summons or notice then he may order publication which " * * * is made once in some newspaper printed and circulated in the county in which said court is located at least one week before the time fixed * * *" for the hearing. The order of publication contains the Michigan court's finding that it is impractical to serve the respondent personally and there is no contention made that the publication was not within the limitations of time set forth in the statute. The respondent's contention in this regard is that the consent to the adoption entered by the Michigan court was entered improperly, the court's action in terminating the parental rights, upon which the authority of the court to consent is based, being in violation of the due process clause of Art. 14, Sec. 1 of the United States Constitution and Art. 1, Sec. 10 of the Constitution of Missouri, and Art. II, Sec. 16 of the Constitution of Michigan 1908. In particular it is contended that "neither the petition nor summons nor published notice contained any notice that it

was contemplated or intended to make said children wards, temporary or permanent, of said court, or to make them wards * * for the purpose of consenting to an adoption." The importance of the consent and the termination of parental rights upon which it is based is obvious but is made doubly so by the repetitious reference to those orders made in the later orders of the Michigan court. For example, the consent to the adoption filed by the Michigan court in the instant case recites that "* * * an order was entered in the Juvenile Division of this Court, * * *, placing the above-named child in the permanent custody of the Court and making the said child available for adoption; * * *" and the "Order of Adoption—Immediate Confirmation" signed by that court recites that the "Consent to said adoption having been *duly* and *legally* filed * * * *in accordance with the statute in such case made and provided* * * *" (emphasis supplied) and also that "An order of this Court having been *duly* entered on the 19th day of November, 1959 terminating the parental rights of the natural parents * * *" (emphasis supplied).

■ It is immediately to be noted that neither the federal nor state constitutions attempt to define "due process of law" or to state what that clause includes and excludes. In this state, the phrase has been held to be equivalent to the phrase "per leqem terrae" as used in the Magna Charta, Lowry v. Rainwater, 70 Mo. 152 at 156–157. In Michigan, it has been held that the phrase is not susceptible of exact and comprehensive definition. Sipes v. McGhee, 316 Mich. 614, 25 N.W.2d 638 at [14] p. 643, reversed on other grounds, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161. In his argument in Dartmouth College v. Woodward, 4 Wheat. (U.S.) 518, 4 L.Ed. 629, Daniel Webster defined it as including a hearing which proceeds upon inquiry and in which judgment is rendered only after trial. Cooley defined it as meaning "such an exertion of the powers of government as the settled maxims of law permit and

sanction, and under such safeguards for the protection of individual rights as those maxims prescribe for the class of cases to which the one in question belongs." See State v. Jones, 306 Mo. 437, 268 S.W. 83 at 86. In that same case, the court quoted with approval from Wilcox v. Phillips, 260 Mo. 664, 169 S.W. 55, that "The correct interpretation is that the term was intended to perpetuate old and well-established principles of right and justice by securing them from abrogation or violation." It is from these "old and well-established principles of right and justice" and from the realization that notice and an opportunity to be heard are of little value if one is not informed by the notice of the nature of the proceeding and what is thereby sought to be done, that it has become recognized that due process of law is not satisfied unless the notice given is sufficient to make it reasonably probable that the party proceeded against would be apprised of what is going on and given an opportunity to defend. Hill v. Persons Claiming Any Interest In or Lien Upon Certain Real Property, 329 Mich. 683, 46 N.W.2d 584, and see also Legal Record Pub. Co. v. Auditor General, 281 Mich. 578, 275 N.W. 498. In the Hill case cited above and in State ex rel. Anderson v. Becker, 326 Mo. 1193, 34 S.W.2d 27 at [2, 4] p. 29, it was held that the contents of the notice must be such as to inform the one it is directed to of the nature of the proceedings and of the relief sought. In this regard, the published notice recites that:

> "Petition having been filed in this Court alleging that the present whereabouts of the parents of said minor children are unknown, and said children are dependent upon the public for support, and that said children should be placed under the jurisdiction of the Court."

The published notice contains not one word or phrase that in any way informs the respondent or can reasonably be held to infer or cause inquiry that any order of

permanent custody or any termination of parental rights was contemplated at the hearing called for in the notice. It is to be remembered that this respondent had received one petition and had appeared at a hearing thereon where these children were made temporary wards of the Michigan court. The allegations of the published notice, as set forth above, are in reality but a short restatement of the essential allegations of the petition which she received in that proceeding. Moreover, as the excerpts from the testimony at the first hearing of November 21, 1957, illustrate, the major emphasis at that hearing was again and again placed upon the temporary nature of the court's order. As a matter of fact, the Michigan court itself stated at that hearing and in her presence that the respondent had " * * * primary right to her children." Again and again the court spoke of leaving the children with the petitioners for the present school semester and that the children should " * * * stay this year and next with the grandparents * * *" There is nothing in that entire proceeding that would in any way lead the respondent to believe that any action would ever be taken other than that which was done, i.e., make the children temporary wards of the court. In view of these facts, the allegations of the published notice would be especially meaningless to the respondent and even more completely than under other circumstances lead her to believe that nothing was involved over and above a continuation of that which had already been done.

■ Moreover, in determining whether a form of notice meets the requirements of procedural due process, the general circumstances surrounding the case, such as the type of proceedings involved, the purpose of the statute under which they are instituted, the character of the relief sought and similar factors are available for our consideration. In re Certain Moneys in Possession and Custody of Union Trust Co. of Pittsburg, Pa., 359 Pa. 363, 59 A.2d 154. That the Michigan legislature is zealous of the sacred relationship a parent bears to a child is abundantly illustrated by the care with which it spelled out the requirements of a second hearing before a temporary ward could be made a permanent ward of the court and the regard it illustrated for the rights of the natural parent by specifically requiring summons or notice in the event of a supplemental order providing permanent custody and terminating parental rights. To approve of a notice in this form would negate all the care with which that legislature drew this statute and result in a disregard for the preservation of a relationship which all courts have again and again stated it was their purpose, and the purpose of the laws they administer, to foster and protect against all attacks except those in which there has been a clear and cogent showing that every reasonable safeguard of that relationship has been complied with and overcome.

■ The respondent also vigorously presses her contentions with regard to fraud in the procurement of the Michigan decree. The allegations of the first petition filed on November 21, 1957, and leading to the Michigan court's action making the children temporary wards of that court was, among other things, that " * * * she (the respondent) has also failed to show any interest in their welfare and well being * * *" This petition was verified as required by Sec. 27.3178 (598.11), Michigan Statutes Annotated, Comp.Laws 1948, § 712A.11. This allegation was knowingly fraudulent. The respondent's counsel secured a copy of a letter dated November 14, 1957 (just 7 days before the petition containing this allegation as to the disinterest of the respondent was filed) from the respondent to the petitioners. This copy has been certified by the register of the Michigan court as identical to the original in their file and is uncontradicted as to date or contents by the petitioners. In that letter, the respondent gave her address as 3414 South Jefferson in St. Louis and thus, since the petitioner Barger contended throughout the proceedings that the only address he knew of for respondent was at 6600 Alabama, it appears that this is the

source of the knowledge which allowed the Michigan court to send notice to her at that address of the proceedings of November 21, 1957. Respondent makes clear in this letter that she intended to bring her children home with her. Also proving the fraudulent nature of the petitioners' allegations was the petitioners' own evidence, as given before the special commissioner in this case, was that what caused the filing of this petition was the respondent's action in contacting the Bargers and stating she would be up to get the children. As the petitioner Mr. Barger put it: " * * * she got an idea she wanted to come up and get the children and called us on the telephone and said she would be up in a couple weeks to get the children * * * " In spite of these clear expressions by the respondent of her interest in her children's welfare and well being and the undenied knowledge, as shown from this letter and from the testimony of the petitioner Mr. Barger, of her interest, the petitioners proceeded to file a petition in which they denied such interest and to verify that petition.

Moreover, the petitioner Mrs. Barger testified that there had been mail at the post office addressed to these children in their then legal name and that she was told by her husband to refuse this mail and did so. While the dates of such occurrences of refusal of mail are not clearly stated in the evidence, a fair inference from the testimony is that these refusals took place prior to the filing of this first petition on November 21, 1957, and thus would also show the falsity of the allegation in the petition. If these refusals were not made at that time, they must have taken place after the first proceeding. In that event, the testimony given by the petitioners to the referee appointed by the Michigan court whereby the petitioners denied any attempt by respondent to contact these children after the first proceeding and prior to October 13, 1959, was knowingly false. Under these circumstances, the fraud of the petitioners is clearly shown.

It is the holding of this court that petitioners' "Motion for Adjudication" be denied and the "Separate Objection of Petitioners to Proceedings Previously Had" be overruled as are petitioners' exceptions. The respondent's attack upon the Michigan adoption decree based upon a lack of procedural due process and upon fraud must be sustained. This being so, and since there is no issue raised herein as to her fitness and since she is the mother of these children, the respondent is entitled to their custody and our writ should be quashed. Charlotte, who by our order has been in the temporary custody of the petitioners, pending the decision in this case, is now ordered from that custody to be delivered into the custody of her mother, the petitioners to comply with such order forthwith. The Commissioner so recommends.

PER CURIAM.

The foregoing opinion of BRADY, C., is adopted as the opinion of this court. The writ of habeas corpus is quashed and Charlotte Barger is ordered delivered into the custody of her mother.

ANDERSON, P. J., and RUDDY and WOLFE, JJ., concur.