**In the Interest of K. P. B., K. J. B., L. D. M., and D. D. M.**

**Nos. 43649, 43609, 43650, 43651, 43659 and 43687.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Dec. 1, 1981.

Mark T. Stoll, Richeson, Roberts, Wegmann, Gasaway, Stewart & Schneider, P. C., Hillsboro, for Delina M.

Alice L. C. Kramer, Hillsboro, for Larry M., Juanita M. and Robert M.

Joseph S. Sanchez, Festus, Guardian ad Litem, for K. P. B. and K. J. B.

Richard Goldstein, Southeast Missouri Legal Services, Inc., Sikeston, for Ronald B.

REINHARD, Presiding Judge.

This is a consolidated appeal from separate orders of the Juvenile Court of Jefferson County in a neglect proceeding involving four children, K. P. B., K. J. B., L. D. M., and D. D. M.

Delina M., natural mother of all four children and Ronald B. were married in 1968. K. J. B. and K. P. B., ages 9 and 7, at the time of the court orders, were born of this marriage. In 1974, Delina and Ronald were divorced, and Delina was granted custody of the children. At that time, Delina took K. J. B., K. P. B., one other son of the marriage with Ronald, and a daughter born prior to the marriage, on a bus to West Virginia. There she was met by Larry M., whom she had met through "Cupid's Delight," a mail order lonely hearts club. They married four months later. L. D. M. and D. D. M. were born in 1975 and 1977 respectively. In 1977, she and Larry filed a petition for adoption of the four children she had taken with her from Missouri. The adoption was granted. In 1978, Delina and Larry separated, and she returned with all of the children to Missouri. Subsequently, in 1979 she and Larry were divorced.

On April 11, 1978, a juvenile officer of Jefferson County filed a neglect petition regarding K. J. B., K. P. B., D. D. M., and L. D. M. The juvenile court appointed a guardian ad litem to represent the interests of the minor children and hearings were conducted on July 11, 1978, April 10, 1979 and October 23, 1980. Delina requested custody of all four children; Ronald requested the West Virginia adoption decree be denied full faith and credit, requested custody of K. J. B. and K. P. B.; while Larry and his parents requested custody of D. D. M. and L. D. M.

The juvenile court found the West Virginia decree to be valid, found K. P. B. and K. J. B. to be neglected children, granted legal custody to the Division of Family Services, and physical custody to Ronald, with reasonable visitation for Delina. The court also found D. D. M. and L. D. M. to be neglected, granted legal custody to the Division of Family Services, and physical custody to Larry's parents, Juanita and Robert, with reasonable visitation rights for Delina.

Delina appeals from that portion of the decree granting physical custody of K. P. B. and K. J. B. to Ronald and that portion of the decree granting physical custody of D.

D. M. and L. D. M. to the parents of her former husband, Larry. The guardian ad litem joins in the appeal from that portion of the decree granting physical custody of K. P. B. and K. J. B. to Ronald. Ronald appeals from that part of the decree giving full faith and credit to the West Virginia adoption decree. We affirm the orders respecting physical custody but reverse as to the validity of the West Virginia adoption decree.

Our standard of review is that of *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976) as set forth in *Matter of Baby Girl B_____*, 545 S.W.2d 696, 697–98 (Mo.App.1976). We must give due regard to the opportunity of the trial court to judge the credibility of the witnesses and the trial court's judgment will be affirmed unless: 1) there is no substantial evidence to support it; 2) it is against the weight of the evidence; or 3) it erroneously applies or declares the law.

The last of these three postulates of judicial review merits reversal of the trial court's order recognizing the validity of the West Virginia adoption decree. The records of the West Virginia proceedings introduced at the hearing establish that on June 7, 1977, Larry and Delina filed a petition for adoption of K. P. B., K. J. B., D. W., and S. D. B. in the Circuit Court of Marshall County, West Virginia. In the petition, it was alleged that Ronald had deserted his wife and children. On that date, the trial court set July 8, 1977 for a hearing on the petition and "ordered that a copy of a Notice of said hearing be sent by registered mail to the said Ronald . . . ." The report of the investigator approving of the adoption was submitted on June 30, 1977. On July 8, 1977, a decree of adoption was rendered by the court. The decree recited that:

> It appearing to the court that notice of the time and place of this hearing was sent by registered mail to Ronald . . . natural father of said [S. D. B.], [K. P. B.] and [K. J. B.] at his last known address more than twenty (20) days prior to the date of this hearing . . . .

Ronald testified that he never received the registered letter advising him of the hearing, nor ever received a copy of the petition. He testified he first learned of the adoption in the summer of 1978.

■■■ Ronald attacks the validity of the decree on several grounds, but chiefly because the trial court failed to follow the West Virginia adoption statute on notice. We believe that his point is well taken. When a judgment of a sister state is pleaded or presented in a court of this state, whether as a cause of action, defense, or as evidence, the party sought to be bound or affected by it may always impeach its validity and escape its effect by showing that the court which rendered it had no jurisdiction over the subject matter, failed to give due notice or that there was fraud in the concoction of the judgment. *Bastian v. Tuttle*, 606 S.W.2d 808, 809 (Mo.App.1980); *Topalian Bros. v. Asadorian*, 104 S.W.2d 713, 716–17 (Mo.App.1937). A judgment rendered by a court of competent jurisdiction of a sister state is presumed, absent any showing to the contrary, to be a judgment wherein the court not only had jurisdiction over the subject matter and the parties, but also that the court followed its laws and entered a valid judgment. *Corning Truck and Radiator Service v. J. W. M., Inc.*, 542 S.W.2d 520, 524 (Mo.App.1976). A party asserting the invalidity of such a judgment has the burden of overcoming that presumption unless the proceedings show the judgment is not entitled to that presumption. *McDougal v. McDougal*, 279 S.W.2d 731, 740 (Mo.App.1955).

There has been no constitutional challenge to the method by which the West Virginia adoption statute provides for service upon an alleged abandoning parent. Consequently, the matter of service is controlled by the laws of West Virginia. *Jones v. Park*, 282 Mo. 610, 222 S.W. 1018, 1022 (1920). The adoption statute, West Virginia Code § 48–4–1 (1980) provides that:

> [I]f the mother and father . . . are living and one . . . has abandoned the child sought to be adopted, only the consent of the other parent shall be required, but

the parent who is alleged to have abandoned the child must be personally served . . . and if after due diligence personal service cannot be obtained . . . then *the copy of the petition and the notice of the hearing* may be sent by registered mail to the last known address of such abandoning parent, such service to be complete upon mailing. (emphasis added)

 We think the proceedings establish the circuit court did not comply with its own statutes providing for service upon an alleged abandoning parent. Here, the trial court was bound by its own statute to send by registered mail a copy of the petition as well as notice of the date, time and place of the hearing to Ronald. The decree, however, recites the only notice sent by registered mail was notice of the hearing date. This is not a case where the decree recites in a summary fashion that the defendant was legally summoned, as was the case in *Williams v. Williams*, 53 Mo.App. 617, 620 (Mo.App.1893), but instead specifically recites the mode and manner of service. There is no entry, return or record that a petition was served on Ronald in any manner. Further, there is no return receipt for the registered letter. Viewed in this light, the decree's failure to recite that he was served with a copy of the petition establishes the trial court did not have proper jurisdiction over Ronald to terminate his parental rights. *In re Barger*, 365 S.W.2d 89 (Mo.App.1963). *See, Severson v. Dickinson*, 216 Mo.App. 572, 259 S.W. 518 (Mo.App. 1924), where the court recognized a Wisconsin judgment, even though defendant was not served a copy of the petition but only a summons, because Wisconsin law did not require a copy of the petition be served on him. Failure to give due notice is a fatal jurisdictional defect and consequently, the State of Missouri is not required to give full faith and credit to the West Virginia adoption decree. *Bastian v. Tuttle*, 606 S.W.2d 808, 809 (Mo.App.1980); *In re Barger, supra.* The juvenile court's declaration to the contrary is therefore error.

We note none of the parties dispute either the court's finding that the children were neglected or that portion of· the decree granting legal custody to the Missouri Division of Family Services. The record amply supports the juvenile court in both of these regards.

Pursuant to Section 211.031,[1] once a child has been found to be neglected, the juvenile court may, under the authority contained in § 211.181.1(1), "place the child under supervision in his own home or in the custody of a relative or other suitable person after the court or public agency or institution designated by the court conducts an investigation of the home, relative or person and finds such home, relative or person to be suitable and upon such conditions as the court may require . . . ."

 We acknowledge the following settled principles of law applicable in any proceeding of this nature. When a child is properly before the court for any purpose and its welfare is involved, it becomes a ward of the court with respect to the issues of that case and that court has inherent jurisdiction to adjudicate custody as it deems will best preserve and protect the child's welfare. Custody is not a permanent status but may be changed by a court of competent jurisdiction when dictated by the needs of the child as the welfare of the child is the court's primary concern. *State ex rel. Catholic Charities of St. Louis v. Hoester*, 494 S.W.2d 70, 73 (Mo.banc 1973).

 With these principles in mind, we now consider Delina's challenge to the court's grant of physical custody of D. D. M. and L. D. M. to the children's grandparents, Robert and Juanita. The juvenile court had only very difficult options available to it. Delina, in 1978, on her return to Missouri was completely unable to provide for her children's needs and voluntarily transferred custody of the children to the Division of Family Services. At the hearing of October 23, 1980, she admitted pleading guilty in July, 1980 to two counts of child abuse. She does not contend here on appeal that

1. All citations hereinafter are to RSMo.1978.

she should have been granted physical or legal custody of the children. The only options available to the court were to place these children with foster parents, with the grandparents, or the father. Delina is unable to convince us, as she was unable to convince the juvenile court, of any reason the home of the grandparents would not be a proper one. Her criticism as to the placement of the children there is based upon the fact that she and Larry had difficulties, that he excessively punished the children on occasion, and that he pleaded guilty to an assault against her. The evidence did reveal that Larry was to reside in the home of his parents. Our review of the record reveals there was substantial evidence to support the trial court's order granting Juanita and Robert physical custody of D. D. M. and L. D. M.

 Delina and the guardian ad litem also argue the grant of physical custody of K. P. B. and K. J. B. to Ronald was error. They allege he is unfit for such custody because of his past history of non-support of the children, his conviction for conspiracy to commit bank robbery, his loss of parental rights by the adoption decree and other additional claims. As we have already stated, the adoption decree is entitled to no standing in this state. Further, it is not the purpose of the statutory neglect proceeding to find substitute or foster parents for children, as the state has an inherent interest in the integrity of the family and in such a proceeding the parental rights should be limited only "to the extent necessary to achieve the most desirable goal when possible of reinstating the natural and normal parent and child relationship." *In re I. M. J.*, 428 S.W.2d 18, 22 (Mo.App.1968). The children had previously been in and out of several foster homes. The Division of Family Services, after a personal inspection of Ronald's home, recommended that Ronald would make a sincere and successful effort to provide a good home for K. J. B. and K. P. B. Ronald was also granted temporary

physical custody of S. D. B. and D. W., in a separate proceeding in the Juvenile Court of St. Louis County. The Division of Family Services found that both of these children liked living there and were being well cared for.

Although Ronald's past history is not impressive, placement of the children with him or with foster homes were the only options available to the court. With the children's welfare in mind, we do not desire to disturb the order of the juvenile court and defer to its determination. The law requires that there will be a continuing investigation and a report every 6 months on the status of these children and review by the court of that report. *See* § 453.310 RSMo.1978. The parties have a right to expect the trial court to review the status of these children with their best interests in mind.

Affirmed in part, reversed in part.[2]

SNYDER and CRIST, JJ., concur.

---

2. The separate motions of Larry, Juanita and Robert to dismiss Delina's appeal, taken with the case, are hereby denied.